528 A.2d 631

**COMMONWEALTH of Pennsylvania**

v.

**Barry Charles GORDON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1984.

Filed June 30, 1987.

524

H. Robert Fiebach, Philadelphia, for appellant.

Sandra L. Elias, Deputy District Attorney, Media, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and MONTGOMERY, JJ.

PER CURIAM: ·

We have this appeal on remand from the Pennsylvania Supreme Court. In *Commonwealth v. Gordon*, 342 Pa.Super. 480, 493 A.2d 691 (1985), *rev'd*, 511 Pa. 481, 515 A.2d 558 (1986), we found insufficient evidence to support appellant's convictions for possession and delivery of a controlled substance, holding that appellant's status as a licensed and registered pharmacist exempted him from prosecution under clauses (16) and (30) of section 13(a) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(16), (30). We found that the provision of the Act applicable to appellant's conduct was clause (14) of section 13(a), as amended, 35 P.S. § 780–113(a)(14), prohibiting the unlawful delivery of a controlled substance by a "practitioner." Based on our determination, we ordered appellant discharged from his convictions under clauses (16) and (30).

However, in *Commonwealth v. Gordon,* 511 Pa. 481, 515 A.2d 558 (1986), the Supreme Court determined that we had erroneously interpreted the Act, and held that a practitioner who sold drugs on the street could be prosecuted the same as any other street dealer. The Court reversed our order vacating the convictions, and remanded the case to this Court for disposition of the two issues remaining on appeal which we did not address in our earlier decision. Having reviewed these issues, we conclude that neither warrants relief. Accordingly, we now affirm the judgment of sentence.

This case arises from a transaction conducted in a motel parking lot in which Mr. Gordon sold a bottle of 100 Dilaudid pills to a criminal informant without a prescription. Before the meeting, Gordon had arranged to sell the informant two bottles of the drug, each containing 100 pills, for a total of $1600. However, the police were able to supply the informant with only $800, and therefore when Gordon entered the informant's car to deliver the drugs, the informant explained that his "contact" had fallen through and that he had been able to obtain only $800, enough for only one bottle. Consequently, Gordon sold only one of the two bottles he had brought with him, although he agreed to keep the second bottle overnight and sell it to the informant the following day.

A team of narcotics detectives had been stationed about the parking lot watching the transaction, and they had also managed to capture the conversation on audiotape. Before Gordon's arrival, they had equipped the informant with an electronic recorder and transmitter which he wore secreted on his person. From a car near the scene, Detective Craig Siti, an officer specially certified in electronic surveillance, monitored and recorded the oral exchange between the parties, while in a separate car Officer Susan Cory and her partner listened in on the transmissions for the informant to say a code phrase that meant the transaction had been completed. When the informant said the word, the police moved in and arrested Gordon, who had exited the infor-

mant's car and was opening the door to his own. From the front seat of Gordon's car, the officers seized the $800 in traceable bills that the informant had given him and the unsold bottle of Dilaudid pills. From the informant, the officers secured the bottle of Dilaudid which Gordon had sold.

The case went to trial before the Honorable Charles C. Keeler in the Court of Common Pleas of Delaware County. During trial, the defense learned that Officer Cory had prepared a police report which the Commonwealth had not disclosed in response to a pre-trial discovery request. Upon learning of the report and after reviewing its contents, defense counsel moved for dismissal of the charges. The court denied the motion. The defendant also objected to the court's admission of tapes and a transcript of his electronically recorded conversation. The court denied this objection as well, and proceeded to find the defendant guilty of one count of possession and one count of possession with intent to deliver and delivery of a controlled substance. After denying post-trial motions, the court sentenced Gordon to a prison term of eleven months to twenty-four months less one day. The court held that the simple possession count merged with the greater charges.

Presently before this court are Gordon's contentions that his convictions should be reversed because 1) the Commonwealth failed to disclose before trial the existence of Officer Cory's police report; and 2) the court received into evidence tapes and transcripts of an illegally intercepted conversation.

## I.

Before trial the defendant had requested, pursuant to Pennsylvania Rule of Criminal Procedure 305(B)(1)(a), that the Commonwealth provide him with "any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth." Defense counsel also asked to see any police reports made of the incident. The

Commonwealth allowed counsel to review tapes and transcripts of the recorded conversation and Detective Siti's report on the interception, but identified no other reports in its possession.

On the eve of trial, arresting officer Susan Cory appeared in the district attorney's office to go over the case and there revealed for the first time that she had prepared a report of the incident. The prosecuting attorney then reviewed and copied portions of the report, but she inadvertently neglected to inform the defendant of its existence before trial began the next day. *See generally* Pa.R.Crim.P. 305(D) ("If, prior to or during trial, either party discovers additional evidence or material previously requested ... which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material or witness."). The defense did not discover the report until recross-examination of Officer Cory at trial. Gordon now advances four reasons why late disclosure of the report allegedly prejudiced him in defending the case.

## A.

Gordon focuses first on statements in the report that he had delivered only one bottle of Dilaudid rather than two. He juxtaposes these statements with one of the informations filed against him by the district attorney, which charged that Gordon "did unlawfully, knowingly and intentionally have in his possession or under his control ... TWO BOTTLES DILAUDID (200 PILLS) with intent to deliver ... *and did deliver same.*" (Emphasis ours). Gordon maintains that the late disclosure of the Cory report violated the ruling of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373

U.S. at 87, 83 S.Ct. at 1196–97; *cf.* Pa.R.Crim.P. 305(B)(1)(a) (codifying *Brady* doctrine as rule of discovery in Pennsylvania). We reject Gordon's attempt to manufacture a *Brady* violation out of the discrepancy between the criminal information and the late-disclosed report, because the evidence in the report about the quantity of drug sold was neither withheld nor exculpatory.

*Brady* affirmed the grant of a new trial in the sentencing phase of a murder prosecution where the prosecutor had failed to inform Brady of his accomplice's confession to the actual killing despite Brady's pre-trial request for the accomplice's extrajudicial statements. In *Brady*, however, the withheld confession "did not come to [Brady's] notice until after he had been tried, convicted, and sentenced, and after his conviction had been affirmed." 373 U.S. at 84, 83 S.Ct. at 1195. Therefore, Brady's jury had imposed the death penalty unaware of a crucial piece of evidence mitigating Brady's culpability in the murder. This, the Supreme Court held, denied Brady his constitutional right to a fair trial. (The Court left the verdict of guilt undisturbed on the ground that under Maryland law the accomplice's confession would not have been admissible in the guilt-or-innocence phase of the trial). *See id.* at 88–90, 83 S.Ct. at 1197–98.

Here, by contrast, the undisclosed police report came to light at trial, and thereafter Judge Keeler reviewed the report and admitted it into evidence. Thus, anything in the report favorable to the defendant was before the learned finder of fact.

In *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981), the Supreme Court of this State laid down the applicable rule where previously withheld *Brady* material is disclosed at trial, and said:

> This is not a situation where the withheld information was discovered only after conviction, but one where the evidence became available to the defense during trial. Moreover, the defense had the opportunity to effectively present this evidence before the jury. Under these cir-

cumstances, we find no justification for granting a new trial. The rationale for doing so in *Brady* and [*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)] was that the jury had convicted without the benefit of the non-disclosed testimony. Such a purpose would not be served in this case where the jury did consider the evidence in question before reaching its verdict. We therefore hold that even if the evidence would be deemed to be exculpatory[,] where it is effectively presented at trial and the belated disclosure does not prejudice the defense, no due process violation has occurred.

493 Pa. at 45–46, 425 A.2d at 357; *accord United States v. Kaplan*, 554 F.2d 577, 580 (3d Cir.1977); *Commonwealth v. Bonacurso*, 500 Pa. 247, 251, 455 A.2d 1175, 1177, *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983); *Commonwealth v. Lowery*, 276 Pa.Super. 569, 581–82, 419 A.2d 604, 610–11, *allowance of appeal denied*, Oct. 29, 1980; *Commonwealth v. Hicks*, 270 Pa.Super. 546, 548–49, 411 A.2d 1220, 1221–22 (1979), *allowance of appeal denied*, Jan. 8, 1980; *see also Commonwealth v. Rose*, 483 Pa. 382, 394–97 & n. 7, 396 A.2d 1221, 1227–29 & n. 7 (1979) (late disclosure of eyewitness's psychiatric treatment not reversible error under *Brady* where jury was told of treatment and of witness's judgment and memory loss resulting from incident).

■ Because Gordon had the opportunity to effectively present the evidence in Cory's report about the quantity of drug delivered, he has shown no prejudice to his defense on that issue, and "[t]his is fatal to his claim of error under *Brady*." *Bonacurso*, 500 Pa. at 251, 455 A.2d at 1177.

The same observation serves to rebut Gordon's tandem claim under Pa.R.Crim.P. 305 (B)(1)(a), which mimics *Brady* in requiring the prosecution to disclose "evidence favorable to the accused which is material either to guilt or to punishment." Although this rule, under which Gordon sought discovery, clearly imposes a mandatory *pre*-trial duty of disclosure which continues through the time of trial,

*see* Pa.R.Crim.P. 305(D); *see also Murphy*, 493 Pa. at 49, 425 A.2d at 359 (Roberts, J., concurring), a defendant seeking relief from tardy disclosure under the rule still must demonstrate prejudice, *see Commonwealth v. Rodgers*, 500 Pa. 405, 456 A.2d 1352 (1983), and this Gordon cannot do because the court admitted the "favorable" evidence in Cory's report about the quantity of drug delivered. *Cf. Murphy*, 493 Pa. at 49, 425 A.2d at 359 (Roberts, J., concurring).

The court in *Bonacurso* rejected a similar dual claim of error under *Brady* and Rule 305. There the prosecutor had been unaware of exculpatory statements by an eyewitness in time to provide them in response to the defendant's pre-trial discovery request, because the detective handling the case had failed to alert the prosecutor to the existence of the statements. However, the defendant learned of the witness at trial and called him to testify, and "[a]ll that he could say was put before the learned trial judge with every opportunity that an unhurried and careful bench trial provides." 500 Pa. at 251, 455 A.2d at 1177. The Supreme Court held that the defendant's advantageous use of the witness's testimony precluded any claim for relief on appeal. Similarly, the late disclosure of Cory's report did no harm to Gordon's defense on the issue of how much drug he had delivered, because the court allowed him every opportunity to present the newfound statements in a favorable light, including through further cross-examination of Officer Cory had he wished. As it was, even before the report surfaced at trial Cory had testified to the circumstances under which one bottle of Dilaudid had been sold to the informant and the unsold bottle had been seized from Gordon's car. Defense counsel had already cross-examined her on this issue, and he questioned her no further on it after reading the belatedly disclosed report, perhaps because nothing in the report contradicted her testimony. *Cf. Commonwealth v. Starks*, 304 Pa.Super. 527, 529–30, 450 A.2d 1363, 1364 (1982) (late disclosure of tape of interview with victim did not deny fair trial where defendant already had victim's contemporaneous written statement, and de-

clined court's remedial offers); *Commonwealth v. Williams,* 295 Pa.Super. 369, 373–76, 441 A.2d 1277, 1279–80 (1982) (loss of victim's formal statement did not deny due process where her testimony cohered with contemporaneous police report and defendant declined to test her credibility with aid of report).

We should also point out that Gordon had ample access before trial to information which showed that the Commonwealth's evidence would prove the sale of only one bottle of Dilaudid. In response to the pre-trial discovery request the Commonwealth had allowed defense counsel to review the tapes and transcripts of the electronically recorded conversation between Gordon and the informant, and these sources disclosed how Gordon had come to the motel to sell two bottles of Dilaudid but had sold only one because, supposedly, the informant's "contact" was no longer interested and the informant had scraped together his last $800. The tapes and transcripts also revealed Gordon's agreement to hold the second bottle overnight for sale to the informant the following day. This version of events is entirely consistent with that portrayed in Officer Cory's report.

Even more significant than the recorded conversation as a pre-trial source of evidence about the quantity of drug delivered was Officer Cory's sworn affidavit of probable cause filed with the criminal complaint. The affidavit, in part, stated: "During this conversation there was talk of purchasing two bottles of pills (Dilaudids) for a price of $800.00 for each bottle. After a brief discussion, *GORDON did deliver to the Co-operative, one bottle of Dilaudid pills,* a controlled schedule II drug, in exchange for $800.00 in U.S. Currency." (Emphasis ours). An analogous case is *Commonwealth v. Haber,* 351 Pa.Super. 79, 505 A.2d 273 (1986), where we found that a police officer's destruction of his investigatory notes supplied no grounds for relief where the substance of the notes had been incorporated into the arrest warrant affidavit and therefore the notes were merely "cumulative" of evidence the defendant already had. 351 Pa.Super. at 87–88, 505 A.2d at 278. The evidence in Cory's

report that Gordon had sold only one bottle of Dilaudid was included in the arrest warrant affidavit, and therefore was merely cumulative of evidence he already had. *See also Commonwealth v. Ignatavich*, 333 Pa.Super. 617, 622, 482 A.2d 1044, 1046 (1984) (alternative holding) (prosecution's failure to supply murder victim's arrest record in response to discovery request was harmless error where defense had the necessary information), *allowance of appeal denied*, April 21, 1985; *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 230–32, 475 A.2d 765, 770–71 (Commonwealth's failure to produce witness's plea agreement from another county did not impair defendant's right to fair trial where defense knew of agreement, had transcripts of witness's sentencing hearings, and cross-examined witness on every conceivable basis for bias), *allowance of appeal denied*, Aug. 21, 1984; *Commonwealth v. Gibson*, 271 Pa.Super. 499, 503, 414 A.2d 364, 366 (1979) (where defense became aware at suppression hearing that the only eyewitness initially had failed to identify defendant, no merit to contention Commonwealth withheld the evidence), *aff'd per curiam*, 500 Pa. 231, 455 A.2d 634 (1983); *Commonwealth v. Wanamaker*, 266 Pa. Super. 503, 505–06, 405 A.2d 932, 932–33 (per curiam) (Commonwealth's failure to reveal murder victim's possession of drugs when killed was harmless to self-defense claim based on alleged drug dispute where jury was given toxicology report showing presence of drugs in victim's body), *allowance of appeal denied*, Oct. 3, 1979; *cf. Commonwealth v. Taylor*, 340 Pa.Super. 87, 104, 489 A.2d 853, 862 (1985) (late disclosure of allegedly inculpatory statement not reversible error under Pa.R.Crim.P. 305(B)(1)(b) where withheld statement was only "minimally" more damaging than statement defendant testified to having made); *Commonwealth v. Cason*, 328 Pa.Super. 326, 331–32, 476 A.2d 1353, 1356 (late disclosed evidence that defendant had admitted ownership of incriminating shoes was both cumulative and harmless where Commonwealth had responded to discovery request by disclosing it had "defendant's shoes," and introduced shoes at trial without objection as those defendant had given police when asked for his shoes), *allowance of appeal*

*denied,* Oct. 1, 1984; *Commonwealth v. Romeri,* 314 Pa. Super. 279, 294–95, 460 A.2d 1139, 1147 (admission of defendant's inculpatory letter did not violate discovery rules where letter had been subject of pre-trial proceedings), *aff'd,* 504 Pa. 124, 470 A.2d 498 (1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984).

Furthermore, we must agree with Judge Keeler that, taken in context, the statements in Officer Cory's report that Gordon had delivered only one bottle of Dilaudid were not material to either guilt or punishment. Offsetting the allegedly "exculpatory" nature of these statements were other statements in the report about Gordon's unsuccessful plan to sell the second bottle, and its seizure from the front seat of his car. Whether Gordon actually "did deliver" the second bottle as the district attorney alleged in the boilerplate language of the criminal information, or only possessed it intending to deliver it as both Cory's report and the evidence at trial indicated, he was equally guilty of violating the prohibitions of 35 P.S. § 780–113(a)(30) (proscribing both delivery *and* possession with intent to deliver), and equally subject to the same statutory penalties for either infraction. *See* 35 P.S. § 780–113(f).

### B.

█ Gordon next invokes evidence from Officer Cory's report indicating that several officers besides Detective Siti had listened in on the electronically intercepted conversation between Gordon and the informant, and argues that had he known of this evidence before trial he would have filed a pre-trial motion to suppress the contents of the conversation on the ground that "unlicensed" officers had monitored the interception. Of course, since this evidence about who had overheard Gordon's conversation was not material to guilt or punishment, the due process rule of *Brady* did not compel its disclosure. Presumably Gordon bases his claim to this evidence on his pre-trial request for police reports, and on the rule that, "Where a specific request is made, evidence is material if it *'might have affected the outcome*

*of the trial.'* " *Commonwealth v. Rose,* 483 Pa. at 396, 396 A.2d at 1208 (dictum) (quoting *United States v. Agurs,* 427 U.S. at 104, 96 S.Ct. at 2398). Gordon, however, misconstrues the authorities he cites, for each was the progeny of *Brady* and hence dealt solely with the discoverability of evidence material to guilt or punishment.

■ We need not, however, resolve whether the Commonwealth improperly withheld evidence relevant to a suppression claim, because Gordon has waived this contention. After the report came to light at trial and defense counsel had reviewed it, he did not assert that late disclosure of the report had deprived the defendant of evidence relevant to suppression, nor did he move for suppression of his client's recorded statements based on anything found in the report. He argued only for dismissal of the charges for the purported withholding of exculpatory, i.e., *Brady,* material, focusing almost exclusively on those statements which related to the quantity of drug delivered.

■ This Court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal. *Commonwealth v. Hernandez,* 339 Pa.Super. 32, 45 n. 7, 488 A.2d 293, 300 n. 7 (1985); *Commonwealth v. Bradshaw,* 324 Pa.Super. 249, 254–55, 471 A.2d 558, 560–61 (Cirillo, J., now P.J.), *allowance of appeal denied,* July 10, 1984; *see also Commonwealth v. Cargo,* 498 Pa. 5, 16–20 & n. 15, 444 A.2d 639, 645–47 & n. 15 (1982). A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief. *See Commonwealth v. Gravely,* 486 Pa. 194, 203 n. 4, 404 A.2d 1296, 1300 n. 4 (1979) (plurality opinion) (different theories of double jeopardy); *Commonwealth v. May,* 485 Pa. 371, 373 n. 3, 402 A.2d 1008, 1009 n. 3 (1979) (different theories for withdrawal of guilty plea); *Commonwealth v. Jackson,* 464 Pa. 292, 296–97, 346 A.2d 746, 747–48 (1975) (different theories for suppression of confession); *Commonwealth v. Negri,* 414 Pa. 21, 32, 198 A.2d 595, 601 (1964) (different theories of illegality of

arrest), *remanded on other grounds on rehearing,* 419 Pa. 117, 213 A.2d 670 (1965) (plurality opinion); *Commonwealth v. Sweger,* 351 Pa.Super. 188, 194, 505 A.2d 331, 334 (1986) (different theories for suppression of statements), *allowance of appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987); *Commonwealth v. Williams,* 346 Pa.Super. 456, 464–65, 499 A.2d 1089, 1093–94 (1985) (different theories for obtaining victim's juvenile record); *Commonwealth v. York,* 319 Pa.Super. 13, 20, 465 A.2d 1028, 1032 (1983) (different theories of prosecutorial misconduct); *Commonwealth v. Beaver,* 317 Pa.Super. 88, 104 n. 9, 463 A.2d 1097, 1106 n. 9 (1983) (different theories for mistrial); *Commonwealth v. Clark,* 287 Pa.Super. 13, 18 n. 15, 429 A.2d 695, 698 n. 5 (1981) (different theories of admissibility); *Commonwealth v. Cohen,* 270 Pa.Super. 90, 93–94, 410 A.2d 1264, 1265 (1979) (different theories of evidentiary insufficiency); *Commonwealth v. Sojourner,* 268 Pa.Super. 472, 480, 408 A.2d 1100, 1104 (1978) (different theories why jury instruction was erroneous), *modified on other grounds on rehearing,* 268 Pa.Super. 488, 408 A.2d 1108 (1979); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 321–24 & n. 9, 386 A.2d 1014, 1022–24 & n. 9 (different theories for evidentiary objection), *allowance of appeal denied,* July 20, 1978; *Commonwealth v. Harmes,* 255 Pa.Super. 147, 153 & n. 1, 386 A.2d 551, 553 & n. 1 (1978) (different suppression theories); *Commonwealth v. Waters,* 248 Pa.Super. 123, 128–29, 374 A.2d 1348, 1351–52 (1977) (same); *see also Commonwealth v. Nelson,* 320 Pa.Super. 488, 494, 467 A.2d 638, 641 (1983) (request for discharge on grounds of insufficient evidence did not raise issue whether defendant should receive new trial at which improperly considered evidence would be excluded).

It is to no avail that Gordon raised his present contention in a brief filed with post-trial motions, and that Judge Keeler, in his written opinion, then considered the claim that the Commonwealth had improperly withheld the information about who had monitored Gordon's conversation. It was too late, at the post-verdict motions stage, for Gordon to raise for the first time an entirely new theory in support

of his argument that the Commonwealth had wrongly withheld the report. *See Commonwealth v. Jones,* 478 Pa. 172, 178, 386 A.2d 495, 497–98 (1978); *Commonwealth v. Williams,* 476 Pa. 557, 569–70, 383 A.2d 503, 509 (1978); *Commonwealth v. Black,* 474 Pa. 47, 55 & n. 7, 376 A.2d 627, 631 & n. 7 (1977); *Commonwealth v. Johnson,* 467 Pa. 146, 159 n. 12, 354 A.2d 886, 893 n. 12 (1976); *Commonwealth v. May,* 466 Pa. 524, 526–27, 353 A.2d 815, 816 (1976); *Commonwealth v. Harley,* 275 Pa.Super. 407, 416, 418 A.2d 1354, 1358 (1980) (Montgomery, J.). " 'A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial.... And second, he must raise the issue on post-trial motion.' *Commonwealth v. Keysock,* 236 Pa.Super. 474, 478–79, 345 A.2d 767, 769 (1975), *allocatur denied,* (citations omitted)." *Commonwealth v. Butts,* 495 Pa. 528, 534, 434 A.2d 1216, 1219 (1981). The lack of any motion or objection at trial specifically directed to the Commonwealth's dilatory disclosure of evidence favoring a suppression claim waived this allegation of error for purposes of appeal, notwithstanding Gordon's later inclusion of the claim in his brief in support of post-trial motions. *See id.; Commonwealth v. Slaughter,* 482 Pa. 538, 544–45, 394 A.2d 453, 456 (1978); *Commonwealth v. Brown,* 467 Pa. 512, 516–17, 359 A.2d 393, 395 (1976); *Commonwealth v. Cooley,* 465 Pa. 35, 40 n. 5, 348 A.2d 103, 106 n. 5 (1975); *Commonwealth v. Newsome,* 462 Pa. 106, 108–09, 337 A.2d 904, 906 (1975); *Commonwealth v. Williams,* 458 Pa. 319, 322, 326 A.2d 300, 302 (1974); *Commonwealth v. Lopez,* 455 Pa. 353, 355–56 & n. 2, 318 A.2d 334, 336 & n. 2 (1974); *Commonwealth v. Dessus,* 262 Pa.Super. 443, 455, 396 A.2d 1254, 1259–60 (1978), *allowance of appeal granted,* 262 Pa.Super. 443, 396 A.2d 1254 (Pa.1979); *Commonwealth v. Gore,* 262 Pa.Super. 540, 552, 396 A.2d 1302, 1308 (1978); *see also Commonwealth v. Cargo,* 498 Pa. at 16, 444 A.2d at 645 (dictum) (new allegations of error may not be raised for first time in brief on post-trial motions); *Commonwealth v. Gravely,* 486 Pa. at 198–99, 404 A.2d at 1297–98 (prospective ruling) (same); *Commonwealth v. Rosenfield,* 297 Pa.

Super. 252, 443 A.2d 822 (1982) (same); *Commonwealth v. Shain*, 324 Pa.Super. 456, 467–68 & nn. 1–2, 471 A.2d 1246, 1251 & nn. 1–2 (finding it irrelevant that trial court considered unpreserved claims in its post-verdict opinion), *allowance of appeal denied*, 324 Pa.Super. 456, 471 A.2d 1246 (Pa.1984); *cf. Commonwealth v. Vernon*, 324 Pa.Super. 395, 402, 471 A.2d 897, 900 (1984) (defendant's failure to request remedy specifically under Pa.R.Crim.P. 305(E) didn't waive issue of discovery violation where defendant had raised the issue at trial and in post-trial motions).

Our Supreme Court's rules on issue preservation simply do not allow the parties to change their theories for relief indiscriminately as they move through the trial and appellate processes. Any less exacting procedure for attacking the rulings of trial courts would seriously undermine judgment finality and deprive both the courts and opposing parties of the means to respond adequately to such challenges. *See Commonwealth v. Waters*, 477 Pa. 430, 434, 384 A.2d 234, 236 (1978) ("At the trial level, counsel's precise statement of issues and grounds relied upon ... insures that both the trial court and Commonwealth will have adequate notice of the legal theories being advanced."). Here, had the Commonwealth known at trial that Gordon objected to late disclosure of the report because of its effect on his suppression claim, then the prosecutor could have offered evidence and argument designed to show that the necessary information was available to Gordon before trial, or that the late disclosure otherwise had not prejudiced his suppression claim. In the absence of any signal which raised this ground for relief at trial, we find it waived.

### C.

■ Gordon alleges that, had he known of information in Cory's report "crucial to impeachment" of her credibility, he would not have waived his constitutional right to a jury trial. Gordon does not specifically identify the evidence in the report which allegedly "impeached" the officer, making

it hard for us to determine when or whether he brought the alleged evidence to the attention of the trial court. It is clear however, that in his brief filed with post-trial motions Gordon did not pursue any contention that the Commonwealth's conduct had misled him into waiving a jury trial. Having "[t]hus deprived [the court] of the benefit of [this] legal theory underlying the assertion of error," *Commonwealth v. Williams*, 476 Pa. at 570, 383 A.2d at 509, Gordon has abandoned this claim, and waived it for purposes of appeal. *See Commonwealth v. Manigault*, 501 Pa. 506, 509, 462 A.2d 239, 240–41 (1983); *Commonwealth v. Holzer*, 480 Pa. 93, 100–01, 389 A.2d 101, 105 (1978); *Williams*, 476 Pa. at 570 & n. 11, 383 A.2d at 509–10 & n. 11; *Commonwealth v. Byers*, 349 Pa.Super. 162, 165, 502 A.2d 1324, 1326 (1986) (en banc); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 353 n. 21, 490 A.2d 438, 456 n. 21 (1985); *Commonwealth v. Kuhn*, 327 Pa.Super. 72, 83–84, 475 A.2d 103, 109 (plurality opinion), *allowance of appeal denied*, Oct. 1, 1984; *Commonwealth v. Pittman*, 320 Pa.Super. 166, 170–71, 466 A.2d 1370, 1371–72 (1983); *Commonwealth v. Dobson*, 298 Pa.Super. 1, 6, 444 A.2d 144, 147 (1982); *Commonwealth v. Perry*, 279 Pa.Super. 32, 36, 420 A.2d 729, 731 (1980); *Commonwealth v. Marcocelli*, 271 Pa.Super. 411, 417, 413 A.2d 732, 735 (1979), *allowance of appeal denied*, Aug. 11, 1980; *Commonwealth v. Tucker*, 267 Pa.Super. 243, 246, 406 A.2d 785, 787 (1979); *Commonwealth v. Dessus*, 262 Pa.Super. at 452–53, 396 A.2d at 1258.

In any event, in his opinion in the *Bonacurso* case, Justice McDermott thoroughly refuted the type of claim Gordon now seeks to raise:

Appellant's final contention is that if he had known of [an unfavorable] eye witness ..., he would not have waived trial by jury. Because this is belied by the fact that the Commonwealth never denied the existence of an eye witness, this contention is meritless. Furthermore, there are no differences in a defendant's rights or the legal principles involved between a jury case and a non-

jury case. The same rules of evidence apply and the same burdens of proof remain....

... [A]ppellant voluntarily ... chose a non-jury method of trial. The fairness of that method is not determined by the type of evidence offered or the number of witnesses introduced. Absent error of law, bias or prejudice there is no inherent unfairness in a bench trial as contrasted to a trial by jury. We cannot accept that, once chosen, one form of the right to an open and public trial is less productive of fairness than the other or that one is less capable of rendering a fair verdict upon the same evidence. Moreover, the appellant here made no motion for continuance or mistrial. He cannot await a verdict without protest and then complain.

500 Pa. at 255, 455 A.2d at 1179, 1180 (citations omitted); *cf. Commonwealth v. Hussmann*, 335 Pa.Super. 603, 485 A.2d 58 (1984) (rejecting defendant's claim he would not have testified or would have testified differently had prosecution revealed it had his depositions from a related civil case).

## D.

■ The final piece of evidence which Gordon extracts from the report is information showing that the Commonwealth knew he was a licensed pharmacist. In light of our high court's ruling that Gordon's status as a licensed pharmacist did not immunize him from prosecution under 35 P.S. § 780–113(a)(16) and (30), the pharmacist's license was not exculpatory, and the Commonwealth's pre-trial knowledge of it was irrelevant.

Even assuming the relevance of this information, we note that Detective Siti's electronic surveillance report, which defense counsel did review before trial, twice referred to Gordon as a "pharmacist."

■ Finally, whatever slight kernel of merit this claim may have contained, Gordon waived it by not including it in his brief on post-trial motions. *See, e.g., Williams*, 476 Pa. at 570 & n. 11, 383 A.2d at 509–10 & n. 11; *Hassine*, 340 Pa.Super. at 353 n. 21, 490 A.2d at 456 n. 21; *Dessus*, 262

540

Pa.Super. at 452–53, 396 A.2d at 1258; *see also Commonwealth v. Quarles*, 361 Pa.Super. 272, 279, 522 A.2d 579, 582 (1987) (Olszewski, J.).

\* \* \* \* \* \*

 In sum, we find that Gordon has demonstrated no *Brady* violation, and that the trial court's measured response to his request for sanctions for an alleged violation of the rules of discovery was entirely appropriate. The court properly upheld Gordon's right to review and use Officer Cory's report in connection with her testimony by granting a short recess and allowing whatever favorable use could be made of the report. *See generally Commonwealth v. Grimm*, 249 Pa.Super. 441, 378 A.2d 377 (1977); *Commonwealth v. Rines*, 247 Pa.Super. 429, 372 A.2d 901 (1977); *Commonwealth v. Cooper*, 240 Pa.Super. 477, 362 A.2d 1041, *vacated per curiam on other grounds*, 468 Pa. 390, 363 A.2d 783, *cert. denied*, 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1976); *Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441 (plurality opinion), *allocatur refused*, Oct. 24, 1974; *Commonwealth v. Swierczewski*, 215 Pa.Super. 130, 257 A.2d 336 (1969). Gordon's request for dismissal of the charges, moreover, was out of proportion to the discovery violation alleged. Pennsylvania Rule of Criminal Procedure 305(E) provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

When a party has failed to comply with Rule 305, the trial court has broad discretion in choosing an appropriate remedy. *Commonwealth v. Palmer*, 319 Pa.Super. 56, 58, 465 A.2d 1050, 1052 (1983); *Commonwealth v. Johnson*, 310 Pa.Super. 389, 395, 456 A.2d 988, 993 (1983). However, we have found termination of the prosecution to be "a penalty

far too drastic" for a prosecutor's violation of discovery rules. *Commonwealth v. Parente*, 294 Pa.Super. 446, 452, 440 A.2d 549, 552, *allowance of appeal denied*, May 26, 1982 (Pa.1982); *accord Commonwealth v. Yost*, 348 Pa.Super. 297, 502 A.2d 216 (1985); *see also Commonwealth v. Woodell*, 344 Pa.Super. 487, 492, 496 A.2d 1210, 1213 (1985) ("It is conceivable, of course, that a violation may be so egregious as to recommend dismissing all charges. Such an order, however, was not warranted under the circumstances present in this case."); *cf. Commonwealth v. Melendez*, 326 Pa.Super. 531, 474 A.2d 617 (1984) (new trial was appropriate remedy for late disclosure of inculpatory statement); *Commonwealth v. Thiel*, 323 Pa.Super. 92, 470 A.2d 145 (1983) (new trial appropriate for surprise disclosure of inculpatory rebuttal evidence). *But cf. United States v. Leta*, 60 F.R.D. 127 (M.D.Pa.1973) (dismissal "may" be appropriate remedy for obvious *Brady* violation).

"The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." *Commonwealth v. Simons*, 342 Pa.Super. 281, 294, 492 A.2d 1119, 1126 (1985) (en banc) (quoting *United States v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981)), *aff'd*, 514 Pa. 10, 522 A.2d 537 (1987). The prosecutor's inadvertent transgression of failing to timely reveal a police report produced no prejudicial "fruits" in this case, because the defendant had full use of the report at trial. The court offered sufficient redress for the late disclosure, and we can grant no further remedy on appeal.

## II.

■ Gordon's contention that the court should have suppressed his electronically recorded conversation is waived because he bases his argument on a different legal theory from that raised at trial.

Gordon argues on appeal that the contents of the conversation should have been suppressed under the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5721, because Officer Cory, who listened in on the transmissions,

was not legally certified to conduct electronic surveillance. Section 5704(2) of the Act states, inter alia, that it is not unlawful for a law enforcement officer or someone acting at his request to intercept an oral communication where one of the parties to the communication has given prior consent. 18 Pa.C.S. § 5704(2)(ii). This section further provides, however, that such interceptions are subject to the recording and record-keeping requirements of section 5714(a), which requires that "[w]henever an interception is being monitored, the monitor shall be an investigative or law enforcement officer *certified under section 5724 (relating to training)." Id.* § 5714(a) (emphasis added). Officer Cory was not certified under section 5724, and thus, Gordon maintains, the interception was illegal.

At trial, however, when the prosecutor moved to introduce the tapes and transcript of the intercepted conversation, and after Cory's role in the surveillance had been fully disclosed, Gordon did not object to admission of the evidence on the ground that Officer Cory was uncertified under section 5724. Rather, he maintained only that the informant had not specifically consented to Officer Cory's listening in on the conversation through a separate listening device. *See generally id.* § 5704(2)(ii) (consent to interception must be voluntary). To establish this point, Gordon cited the memoranda of consent signed by the informant, which identified Detective Siti and the equipment he was to use, but which did not mention Officer Cory.

■ Whether Officer Cory was legally certified by training to conduct electronic surveillance is a different legal question from whether the informant voluntarily consented to her interception of the conversation. The raising of one particular theory in support of a suppression claim is not sufficient to preserve all other possible legal grounds for suppression of the same evidence. *See Commonwealth v. Jackson,* 464 Pa. 292, 346 A.2d 746 (1975); *Commonwealth v. Sweger,* 351 Pa.Super. 188, 505 A.2d 331 (1986), *allowance of appeal denied,* 513 Pa. 634, 520 A.2d 1385 (1987); *Commonwealth v. Harmes,* 255 Pa.Super. 147, 153 & n. 1,

386 A.2d 551, 553 & n. 1 (1978); *Commonwealth v. Waters,* 248 Pa.Super. 123, 374 A.2d 1348 (1977).

It is a firm rule in this jurisdiction that if the ground [for] an objection to the admission of evidence is specifically stated, all other reasons for the exclusion of the evidence are waived and may not be raised thereafter. *Commonwealth v. Stoltzfus,* [462 Pa. 43, 60, 337 A.2d 873, 881 (1975)]; *Commonwealth v. McNeal,* 456 Pa. 394, 398, 319 A.2d A.2d 669, 672 (1974); *Commonwealth v. Budd,* 443 Pa. 193, 195, 278 A.2d 879, 880 (1971); *Commonwealth v. Raymond,* 412 Pa. 194, 202–203, 194 A.2d 150, 154 (1963) [, *cert. denied,* 377 U.S. 999, 84 S.Ct. 1930, 12 L.Ed.2d 1049 (1964)].

*Commonwealth v. Williams,* 476 Pa. 557, 569–70, 383 A.2d 503, 509 (1978); *accord Commonwealth v. Pitts,* 486 Pa. 212, 220, 404 A.2d 1305, 1309 (1979) (plurality opinion); *Commonwealth v. Witherspoon,* 481 Pa. 321, 324 n. 4, 392 A.2d 1313, 1314 n. 4 (1978); *Commonwealth ex rel. Wilkes v. Maroney,* 423 Pa. 113, 119, 222 A.2d 856, 860 (1966); *Commonwealth v. Updegrove,* 413 Pa. 599, 605, 198 A.2d 534, 537 (1964); *Commonwealth v. Berry,* 355 Pa.Super. 243, 256, 513 A.2d 410, 416 (1986); *Commonwealth v. Williams,* 346 Pa.Super. 456, 464, 499 A.2d 1089, 1093 (1985); *Commonwealth v. Frederick,* 327 Pa.Super. 199, 213–14, 475 A.2d 754, 762 (1984); *Commonwealth v. Warren,* 313 Pa.Super. 390, 394, 459 A.2d 1285, 1287 (1983); *Commonwealth v. Ridall,* 280 Pa.Super. 316, 320, 421 A.2d 740, 743 (alternative holding), *allowance of appeal denied,* 280 Pa.Super. 316, 421 A.2d 740 (Pa.1980); *Commonwealth v. Harley,* 275 Pa.Super. 407, 415, 418 A.2d 1354, 1357 (1980); *Commonwealth v. Green,* 251 Pa.Super. 318, 324 n. 4, 380 A.2d 798, 801 n. 4, *allocatur refused,* 251 Pa.Super. xxxiii (Pa.1977); *Commonwealth v. Rhodes,* 250 Pa.Super. 210, 218, 378 A.2d 901, 904–05 (1977); *Commonwealth v. Williams,* 230 Pa.Super. 259, 261, 326 A.2d 420, 421 (1974) (alternative holding); *Commonwealth v. Markwich,* 178 Pa.Super. 169, 172, 113 A.2d 323, 325, *allocatur refused,* June 16, 1955; *see also Commonwealth v. Lawson,* 315 Pa.Super. 84, 89, 461 A.2d 807, 810 (1983); *Commonwealth*

544

*v. Guess,* 266 Pa.Super. 359, 373–74, 404 A.2d 1330, 1337 (1979); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 324 n. 9, 386 A.2d 1014, 1024 n. 9, *allowance of appeal denied,* July 20, 1978. Therefore, Gordon's present argument for exclusion of the evidence is waived, notwithstanding the trial court's consideration and decision of the issue after Gordon raised it in his brief on post-trial motions. *See Williams,* 476 Pa. at 569, 383 A.2d at 509; *see also Commonwealth v. May,* 466 Pa. 524, 526–27 & n. 3, 353 A.2d 815, 816 & n. 3 (1976) (trial court's consideration of untimely claim raised at post-verdict motions stage did not preserve issue for appeal); *Commonwealth v. Shain,* 324 Pa.Super. 456, 467–68 & nn. 1–2, 471 A.2d 1246, 1251 & nn. 1–2 (same), *allowance of appeal denied,* June 7, 1984.

Affirmed.