J-S37008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WESLEY RASHAWN RICHARDS | |
| Appellant | No. 488 WDA 2015 |

Appeal from the Judgment of Sentence February 11, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000567-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 28, 2016**

Appellant, Wesley Rashawn Richards, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for third-degree murder, persons not to possess firearms, and firearms not to be carried without a license.[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> This matter arises out of the shooting death of the [V]ictim…on October 18, 2013 in a bar on the North Side of Pittsburgh.  The Commonwealth presented the testimony of two eyewitnesses to the shooting and video surveillance which also showed the shooting.  The eyewitnesses testified that in the early morning hours [Victim], [Appellant] and [Appellant's] companion entered

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6105(a)(1), 6106(a)(1), respectively.

the bar and were searched by a security guard at the door. When [Victim] entered the bar the first time, the security worker, Brian Collins, searched him and found a pocket knife which he removed and placed behind the bar. Later, [Vicitm] left the bar and the knife was returned to him. Shortly thereafter, [Victim] returned and was searched again but the knife was not found. [Appellant] and his companion, Walter Banks, were also searched each time they entered or returned to the bar but [the guard] found no weapons. [Mr.] Collins knew [Appellant] for several years and also knew [Victim] from the neighborhood.

At some point [Mr.] Collins became aware of something happening towards the back of the bar and as he went towards that area he saw [Victim] falling to the ground and then saw [Appellant] come around the corner with a gun in his hand. [Mr.] Collins grabbed [Appellant] and pinned him against the bar but was then hit in the head with a bottle by [Mr.] Banks. Stunned by the blow to the head, [Mr.] Collins let go of [Appellant] and when he looked again he saw [Appellant] standing over [Victim] shooting at him three times as he lay on the ground. [Mr.] Collins then followed [Appellant] and [Mr.] Banks towards the back as they left but then returned to [Victim]. [Mr.] Collins found [Victim] still alive and saw a closed pocket knife on the ground next to him.[1]

[1] The autopsy showed [Victim] died of gunshot wounds to the trunk. The first entered in the central upper back and the second in the lateral left buttock.

The Commonwealth also called the disc jockey who was working at the bar that night, Sylvanius Flowers, who also testified that he observed [Victim], [Appellant] and [Mr.] Banks standing near the bar together and they appeared to be laughing and joking. He then saw [Appellant] backing up toward the stairs and pull a gun out. He testified:

I'm standing there talking to a young lady. [Victim] is standing there with the other guy, his arm around [Victim's] neck. And me and the young lady was talking on my right side. And I happen to look over

- 2 -

and I see [Appellant] reach down beside his knees and pull out a gun.

[Mr.] Flowers also testified:

He pulls the gun up. He fires a shot. [Victim] duck[s] and take[s] the other guy's arm off [from around his neck] and he tries to run. [Then] after that he falls down. I don't know if he was hit or not but he falls down. Then [Appellant] comes up from around the back, steps back some, and starts running back, and goes and shoots him three times in the back.

[Mr.] Flowers testified that he never saw a knife in [Victim's] hand and never saw him threaten [Appellant] with a knife. He also testified that he saw the security guard, [Mr.] Collins, grab [Appellant] and wrestle with him for the gun before [Mr.] Collins was hit in the head with a bottle. The bartender, Tylonda Northington, also testified that she heard shots and ducked behind the bar and then saw [Mr.] Collins struggling with [Appellant] and [Appellant's] hand come over the bar with a gun in it.

The Commonwealth also introduced video surveillance taken from several cameras in the bar that showed [Victim], [Appellant] and [Mr.] Banks inside the bar before and during the shooting and confirmed the testimony of the eyewitnesses. The Commonwealth also introduced the certification that [Appellant] was not licensed to carry a firearm and it was stipulated that [Appellant] had a felony conviction that rendered him a person not to possess.

(Trial Court Opinion, filed July 20, 2015, at 2-4) (internal citations omitted).

Procedurally, the court convicted Appellant on November 3, 2014, of third-degree murder, persons not to possess firearms, and firearms not to be carried without a license. The court sentenced Appellant on February 11, 2015, to an aggregate term of twenty to forty years' imprisonment. Appellant timely filed post-sentence motions on February 19, 2015, which

the court denied on February 23, 2015. Appellant timely filed a notice of appeal on March 25, 2015. On April 1, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension, Appellant timely complied.

Appellant raises one issue for our review:

> WERE APPELLANT'S STATE AND FEDERAL DUE PROCESS RIGHTS (AS GUARANTEED HIM BY PA. CONST. ART. I § 9 AND U.S. CONST. AMEND. XIV) VIOLATED WHEN HE WAS CONVICTED OF THE CRIME OF THIRD DEGREE MURDER— RATHER THAN, AS HE SHOULD HAVE BEEN, OF VOLUNTARY MANSLAUGHTER UNDER EITHER 18 PA.C.S. § 2503—BASED ON INSUFFICIENT EVIDENCE (THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT'S ACT OF KILLING THE DECEDENT…[WAS] NOT AN ACT THAT UNDER THE CIRCUMSTANCES OF THIS CASE CONSTITUTED EITHER IMPERFECT SELF-DEFENSE VOLUNTARY MANSLAUGHTER OR HEAT-OF-PASSION VOLUNTARY MANSLAUGHTER)?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Randal B. Todd, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion at 4-7) (finding: Victim did not exchange words with Appellant, threaten Appellant, or make gestures or actions directed to Appellant which could reasonably be construed as serious provocation; no evidence suggested Victim threatened Appellant with knife Victim had in his

possession or attempted to stab or injure Appellant; rather, eyewitness testimony and surveillance camera footage show Appellant acted with malice as he stood over Victim and repeatedly fired shots at him while Victim was lying on ground; record belies Appellant's assertion that he acted in sudden and intense passion resulting from serious provocation by Victim; Commonwealth presented sufficient evidence to sustain Appellant's conviction for third-degree murder).[2] Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016

---

[2] Appellant also claims the evidence at trial supported a voluntary manslaughter conviction based on an "imperfect self-defense" theory. **See** 18 Pa.C.S.A. § 2503(b) (explaining any person who intentionally or knowingly kills individual commits voluntary manslaughter if at time of killing he believes circumstances to be such that, if they existed, would justify killing, but his belief is unreasonable). Nevertheless, Appellant relied solely on the heat-of-passion voluntary manslaughter theory at trial, so this claim is waived. **See Commonwealth v. Gordon**, 528 A.2d 631, 638 (Pa.Super. 1987), *appeal denied*, 517 Pa. 621, 538 A.2d 875 (1987) (stating: "This Court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal").

- 5 -