J-A02015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAAC WILLIAM TIMMS | : | |
| | : | |
| Appellant | : | No. 115 WDA 2021 |

Appeal from the Judgment of Sentence Entered December 30, 2020
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000393-2020

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 4, 2022**

Appellant, Isaac William Timms, appeals from the judgment of sentence entered on December 30, 2020, following his jury trial convictions for two counts of aggravated assault and one count of endangering the welfare of a child.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On January 1, 2020, Appellant watched his paramour's two-year-old son overnight while the child's mother worked.   On January 2, 2020, when the child would not wake up, his mother took the child to a local hospital.   The child was subsequently life-flighted by helicopter to a hospital in Akron, Ohio, placed on a ventilator, and eventually recovered.  While under medical care,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(8), 2702(a)(9), and 4304(a)(1), respectively.

hospital staff observed bruises on the child's buttocks and opined the injuries were consistent with spanking using an object, most likely a spatula. A hospital report indicated there was tetrahydrocannabinol (THC) in the child's bloodstream.[2] As a result, the Commonwealth charged Appellant with aggravated assault for intentionally giving the child THC, aggravated assault for striking the child, and one count of endangering the welfare of a child. A jury trial commenced on October 13, 2020. Pertinent to this appeal, the Commonwealth presented the testimony of Dr. Paul McPherson. Dr. McPherson testified that, after reviewing a hospital report indicating high levels of THC in the child's bloodstream, he opined that THC was intentionally administered to the child. The jury ultimately convicted Appellant of the aforementioned charges. On December 30, 2020, the trial court sentenced Appellant to an aggregate term of five and one-half to 11 ½ years of incarceration. This timely appeal resulted.[3]

_____

[2] THC is the active ingredient found in marijuana. In this case, there is no dispute that the child had access to THC oil used for vaping. **See** Appellant's Brief at 3 ("The undisputed evidence at trial showed that both [Appellant] and the mother frequently vaped THC oils in the house, but supposedly not around the child. The evidence further established that THC cartridges, some of them leaking THC oil, were found in various places, including a table and in a trashcan well within the child's reach. It was also undisputed at trial that the child had previously accidentally ingested THC of his own accord after exploring his surroundings.").

[3] Appellant filed a notice of appeal on January 19, 2021. After the trial court granted an extension for the preparation of trial transcripts, Appellant filed a timely, concise statement of errors complained of on appeal pursuant to
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue[4] for our review:

1. Did the trial court abuse its discretion when it allowed an expert to testify about a report that relied upon another report that was never produced to the defense?

Appellant's Brief at 2.

Appellant argues the trial court erred or abused its discretion in allowing Dr. McPherson to rely upon a hospital toxicology report to form his opinion. *Id.* at 5-8. More specifically, Appellant contends he "preemptively objected to testimony from the doctor that would have conveyed the specific levels of THC in the child's blood on hearsay grounds, noting that the doctor had relied on [a] hospital record that cited a toxicology report to form his opinion, but said toxicology report was never produced to the defense." *Id.* at 4. Appellant recognizes that "the results of blood alcohol and drug tests are generally considered facts and thus admissible as business records, the reason those kinds of results are admissible is because there is sufficient indicia of reliability

_____

Pa.R.A.P. 1925(b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 29, 2021.

[4] Appellant raised a second issue in his Rule 1925(b) statement pertaining to jury instructions, but he has not presented or developed that issue on appeal. As such, Appellant has abandoned that issue and we find it waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **see also Commonwealth v. Heggins**, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived).

associated with the results." *Id.* at 5 (case citation and internal quotations omitted). Appellant concludes:

> True as it may be that lab reports containing facts are admissible as business records, and testimony about those reports from non-authors of those reports is proper, the predicate for that admissibility is that the record itself is actually produced to the defense so that proper cross-examination can be effectuated.
>
> Moreover, contrary to the trial court's opinion, the circumstances of this case do show a lack of trustworthiness, such that the doctor's testimony that was based on the non-produced report should have been precluded. There is no indication of what kind of test was performed on the child's urine or what methods were used to arrive at the result. When the actual report being relied on is not produced, the presumption should be that testimony relying on the non-produced testimony is untrustworthy. Otherwise[,] anyone can say anything they want about a report they claim they read but that nobody else has [seen]. This kind of evidence is precisely what the rule against hearsay eschews. Reversal is warranted.

*Id.* at 6-7 (internal quotations and footnote omitted).

Here, the trial court first noted that Appellant acknowledged that the results of blood tests for narcotics are generally considered facts and, thus, admissible as business records. Trial Court Opinion, 4/29/2021, at 3. The trial court recognized that, on appeal, Appellant was challenging the reliability of the medical report. *Id.* The trial court, however, concluded that Appellant stipulated to the authenticity of the child's medical records at trial, only objected to the doctor's testimony on hearsay grounds, and, therefore, waived his claim that the document at issue was untrustworthy. *Id.* at 4-5. Regardless, the trial court also determined:

> Additionally, Dr. McPherson's testimony [] establishe[d] the authenticity of the records and the level of THC in the child's

system. Dr. McPherson was established as an expert. Dr. McPherson evaluated over a thousand child abuse cases, he examined the child at issue, he reviewed and relied upon the records at issue of other physicians and hospital staff in this matter, and in his opinion the child victim's THC/marijuana toxicity was "extremely high." The doctor testified the child's condition and respiratory issues were consistent with THC toxicity. […A]nyone with sufficient knowledge of the identity, preparation or maintenance of the records may authenticate the same.

*Id.* at 5 (internal citations and quotations omitted).

We adhere to the following standards:

Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record.

***Commonwealth v. Melvin***, 103 A.3d 1, 35 (Pa. Super. 2014).

"**Unless stipulated**, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901 (emphasis added). This Court has previously determined that the failure to "object to the admissibility of the records under Rule 901 at trial, [] waive[s] that argument for purposes of appeal." ***Folger ex rel. Folger v. Dugan***, 876 A.2d 1049, 1055 (Pa. Super. 2005) (parents of child who was born with severe and permanent neurological injuries waived for appellate review any challenge against admission of results of polymerase chain reaction (PCR) test, specifically on basis that results were not properly authenticated,

in medical malpractice action, where parents failed to object on that basis at trial). We have also previously rejected an appellate challenge to the authenticity of evidence when the appellant stipulated to its authenticity at trial. *See Commonwealth v. Green*, 204 A.3d 469, 486 (Pa. Super. 2019) ("We [] reject the challenge to the authentication of the photographs because Green stipulated to their authenticity at trial.").

Upon review of the certified record, in this case, Appellant stipulated to the authenticity of the child's medical record. N.T., 10/15/2020, at 35-41. In ruling on authentication, the trial court stated:

> If there was a stipulation as to the authenticity of these medical records prepared by the hospital, that means that these are the actual medical records prepared by the hospital. And [the trial court] does not believe it appropriate that [the parties] stipulated to the authenticity of the records, but [] still needed to bring a custodian to simply say they are authentic, because what's the purpose of authenticity [] if the stipulation is meaningless[?]

*Id.* at 40. We agree with the trial court's assessment. Here, Appellant stipulated to the authentication of the medical record and, thus, recognized the document relied upon was a medical record generated during the regular course of business at the hospital.

Additionally, we recognize that an "authentication inquiry will, by necessity, be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundation showing of its relevance and authenticity." *Commonwealth v. Mosley*, 114 A.3d 1072, 1082 (Pa. Super. 2015) (internal citation and quotations omitted). Evidence may be authenticated by the testimony of a witness. *See* Pa.R.E. 901(b). A

record custodian or other qualified witness may authenticate business records. *See* Pa.R.E. 803(6). "While the general rule is that an expert may not state a conclusion which is based upon evidence not in the record, Pennsylvania recognizes an exception which permits medical witnesses to express opinion testimony on medical matters based, in part, upon the reports of others which are not in evidence, but which the expert customarily relies upon in practice." *Estate of Pew*, 598 A.2d 65, 69 (Pa. Super. 1991), *citing* *Commonwealth v. Thomas*, 282 A.2d 693, 698 (Pa. 1971); *Cooper v. Burns*, 545 A.2d 935, 940 (Pa. Super. 1988), *appeal denied*, 563 A.2d 888 (Pa. 1989). Here, in rendering his opinion, Dr. McPherson testified he reviewed the toxicology report at issue "as part of [his] total evaluation in making [his] diagnosis and assessment" and that "review[ing] medical records from other physicians, nursing staff, social workers [is] a common practice in medicine, not just child abuse pediatrics." N.T., 10/15/2020, at 38. Thus, even if we were to conclude that Appellant's stipulation was not binding, the record supports the trial court's determination that Dr. McPherson's testimony properly authenticated the child's medical records.

Finally, to the extent that Appellant generally challenges the admission of Dr. McPherson's testimony, this Court has determined:

> Our standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Watson*, 945 A.2d 174, 176 (Pa. Super. 2008) (internal citations omitted). We have further stated:

> "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. A medical expert is allowed to express an opinion that is based, in part, on medical records of another doctor, even if they have not been admitted into evidence if those records are customarily relied upon by experts in his profession. So long as an expert utilizes his own expertise, judgment and training in forming his opinions, he may rely upon the records and reports of other medical providers.

*Brown v. Trinidad*, 111 A.3d 765, 773 (Pa. Super. 2015) (case citation, original brackets and some quotations omitted). The factfinder "has discretion to accept or reject a witness' testimony, including that of an expert witness, and is free to believe all, part, or none of the evidence presented." *In re Bosley*, 26 A.3d 1104, 1111 (Pa. Super. 2011). "It is solely the province of the trier of fact to pass upon the credibility of witnesses and to give it such weight as may be accorded to the evidence therein produced." *Commonwealth v. Shaver*, 460 A.2d 742, 745 (Pa. 1983).

Appellant's challenge to Dr. McPherson's expert opinion goes to the persuasive value of the toxicology report or, as Appellant contends, the document's trustworthiness. Although Appellant now claims that the Commonwealth failed to turn the toxicology report over during discovery, it is unclear whether the Commonwealth ever had this report in its possession (separate from the medical record reporting the results) and Appellant never demanded its production. Moreover, upon review, Appellant did not

specifically cross-examine Dr. McPherson about the veracity of, or the methodology in acquiring, the results of the toxicology report he relied upon. N.T., 10/15/2020, at 53-83.  Now, Appellant challenges the type of test and the methods used to arrive at the results.  ***See*** Appellant's Brief at 7.  "This Court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal."  ***Commonwealth v. Gordon***, 528 A.2d 631, 638 (Pa. Super. 1987) (citations omitted).  "A theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief."  ***Id.*** (citations omitted).

Hence, Appellant waived his contention that the toxicology report was untrustworthy or that the Commonwealth committed a discovery violation. Regardless, Dr. McPherson was allowed to express an opinion that was based, in part, on medical records prepared by other medical professionals, even if the toxicology report were not admitted into evidence because that report was customarily relied upon by experts in the medical profession.  In turn, the factfinder was permitted to believe all, part, or none of Dr. McPherson's testimony.  We may not usurp the factfinder's credibility determinations or reweigh the evidence presented.

Accordingly, for all of the foregoing reasons, we discern no abuse of discretion or error of law by the trial court.  As such, there is no merit to Appellant's sole appellate issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/04/2022