J-A21009-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY CAPODIECI, | |
| Appellant | No. 1217 WDA 2015 |

Appeal from the Judgment of Sentence Entered July 8, 2015
In the Court of Common Pleas of Washington County
Criminal Division at No(s):  CP-63-CR-0000350-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:          FILED  NOVEMBER 20, 2017

Appellant, Anthony Capodieci, appeals from the judgment of sentence of an aggregate term of 26-52 years' incarceration, imposed following his conviction for rape of a child and related offenses.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> During trial, the jury heard evidence that on multiple occasions, [Appellant] performed sexual acts upon, and had sexual acts performed upon him by M.B., a minor child, whose date of birth is January [of] 1999 (hereinafter "Victim"). Specifically, Victim testified that he first met [Appellant] in 2009, while working for the Traveling Barnyard Petting Zoo.  Soon thereafter, in 2009, [Appellant] began spending time with Victim away from the petting zoo - shopping, eating meals together, and spending time together at [Appellant]'s home.  [Appellant] then began to engage in sexual activities with Victim, then 10 years of age, including kissing, fondling, and [Appellant's] having Victim manually stimulate his penis.  During some of these visits,

[Appellant] supplied Victim with condoms and forced Victim to perform anal sex on him. On one occasion, when Victim was 12 years of age, [Appellant] forced Victim to watch a pornographic film with him, during which [Appellant] performed oral sex on Victim. On another occasion, [Appellant] purchased an inflatable sex doll and forced Victim to perform sexual acts on the doll by penetrating the doll's orifices while [Appellant] watched. Victim also testified that [Appellant] would force Victim to perform oral sex on him in [Appellant]'s bedroom.

Trooper Joseph Timms and Corporal David Leonard of the Pennsylvania State Police testified that on January 17, 2014, they interviewed [Appellant] at the State Police Barracks in Belle Vernon, Pennsylvania, during which [Appellant] was confronted with the allegations made against him.

[Appellant] was not under arrest at that time, but met with the police voluntarily. After being informed of his Fifth and Sixth Amendment Rights, [Appellant] signed a waiver, agreed to speak with the troopers, and submitted to a polygraph examination. [Appellant] first denied the allegations, but later in the interview, [Appellant] told the police that he had performed oral sex on Victim multiple times, that Victim had performed oral sex on him multiple times, and that Victim had performed anal sex on him multiple times, [Appellant] then provided a written statement to the police, apologizing for having an "inappropriate relationship" with Victim, and admitting that he had performed oral sex on Victim six (6) times, that Victim had performed oral sex on him six (6) times, and that Victim had penetrated him anally three (3) times.

Trial Court Opinion (TCO), 10/3/16, at 5-6.

The Commonwealth ultimately charged Appellant with rape of a child,[1]

rape by forcible compulsion,[2] statutory sexual assault,[3] involuntary deviate

_____

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S. § 3121(a)(1).

[3] 18 Pa.C.S. § 3122.1(b).

sexual intercourse,[4] involuntary deviate sexual intercourse with a child,[5] corruption of minors,[6] indecent assault of a person less than 13 years of age,[7] and indecent assault of a person less than 16 years of age.[8] Appellant was tried by a jury on April 8-9, 2015. The jury returned a guilty verdict on all counts on April 9, 2015. On July 8, 2015, the trial court sentenced Appellant to an aggregate term of 26-52 years' incarceration.[9] Appellant filed a timely notice of appeal on August 6, 2015, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on February 1, 2016. The trial court issued its Rule 1925(a) opinion on October 3, 2016.

Appellant now presents the following issues for our review:

1. The [trial c]ourt erred in denying [Appellant]'s motion for judgment of acquittal on counts 1, 5 and 7, which required proof that the victim was under 13 years of age at the time of the offenses.

2. The [trial c]ourt declined to grant an adequate remedy for the Commonwealth's violation of [Pa.R.Crim.P.] 573 and the Brady[10] rule applying to mandatory disclosure of evidence.

_____

[4] 18 Pa.C.S. § 3123(a)(7).

[5] 18 Pa.C.S. § 3123(b).

[6] 18 Pa.C.S. § 6301(a)(1)(ii).

[7] 18 Pa.C.S. § 3126(a)(7).

[8] 18 Pa.C.S. § 3126(a)(8).

[9] A specific breakdown of the individual sentences imposed is not germane to the issues raised in this appeal.

[10] Brady v. Maryland, 373 U.S. 83 (1963).

3. The [trial c]ourt erred in allowing the Commonwealth to introduce a photo of [V]ictim, as it was more prejudicial than probative.

4. The [trial c]ourt erred in allowing the Commonwealth to question [Appellant] about suspicious activities with children other than the victim.

Appellant's Brief at 7.

Appellant's first claim is a challenge to the sufficiency of the evidence. See Commonwealth v. Andrulewicz, 911 A.2d 162, 165 (Pa. Super. 2006) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge."). Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant asserts that:

[Victim] was born [in] January of 1999. He turned thirteen [in] January [of] 2012. At one point, [he] testified that he stopped spending time with [Appellant] sometime in 2012. Later [during his] testimony, he says that the last time he "hung out" with [Appellant] was in the beginning of 2013. That would mean that

[Victim] was thirteen for a whole year while he and [Appellant] were still spending time together. [Victim]'s mother corroborated that [Victim] saw [Appellant] a few times after her father's funeral in the summer of 2012. Nothing in the evidence narrows the time of the alleged sexual interactions more than testimony that they occurred between 2009 and 2013. All of the incidents may have occurred after January 20, 2012, after [Victim] turned thirteen years old. There is nothing to prove beyond a reasonable doubt that the incidents occurred before January [of] 2012.

Appellant's Brief at 13 (citations omitted).

The trial court states that,

at trial, the court and the jury heard evidence through testimony from Victim, claiming that on multiple occasions from 2009 to 2012, [Appellant], then approximately seventy (70) years of age, engaged in sexual activities with Victim, who was between ten (10) and thirteen (13) years old at the time. These activities included [Appellant's] performing oral sex on Victim, [Appellant's] forcing Victim to perform oral sex on him, [Appellant's] forcing Victim to penetrate him anally, [Appellant's] forcing Victim to pleasure him manually, [Appellant's] forcing Victim to watch a pornographic film with him, and [Appellant's] purchasing a blow-up sex doll and forcing Victim to engage in sexual acts with the doll while [Appellant] watched.

TCO at 8-9.

Furthermore, the Commonwealth argues:

Contrary to the [Appellant]'s claims, a review of the trial transcript shows that the Commonwealth offered extensive evidence that [Victim] was less than 13 years old at the time he was raped and assaulted. [Victim] testified that he was born [in] January [of] 1999. Notes of Trial Testimony, April 8 - April 9, 2015, at 32, 261. [Victim] testified that he met [Appellant] while working in the Barnyard Petting Zoo, where he began working around ages 9 through 10. Id., at 36. [Victim] testified that when he was 10 years old he broke his arm, and began spending more time with [Appellant] at [Appellant]'s "house and restaurants." Id., at 38. [Victim] testified that he was 10 years old the first time that [Appellant] sexually assaulted him. Id., at 39 - 40. [Victim] testified that [Appellant] sexually assaulted him - "Making people give blow jobs and touching private parts and anal

penetration, kissing, stuff like that," as [Victim] put it - when he was ages 10 through 13, on more than one occasion. Id., at 34-35. [Victim] testified that he was 12 years old when [Appellant] had oral sex with him. Id., at 44. [Victim] testified that, when [he] was 14 years old, [Victim] told his girlfriend that [Appellant] had molested him "a couple years ago, when I was younger." Id., at 63-64.

Commonwealth's Brief at 13-14. Moreover, Victim's mother testified that Victim visited Appellant's home "mostly from 2009 through 2011[,]" when Victim was "10, 11, and 12 years old at that point." N.T., 4/9/15, at 246.

After careful review of the record, it must be conceded that precise dates were not provided for Appellant's repeated molestation of Victim. However, despite that ambiguity, the bulk of evidence presented tended to establish that Victim was less than 13 years of age at the time of those assaults. Accordingly, whether the precise acts which formed the factual basis for the age-dependent charges at issue were committed before or after Victim was 13, goes to the weight, not the sufficiency of the trial evidence. As such, whatever ambiguity arose concerning Victim's age pertained to factual matters properly left to the fact-finder to resolve, and did not present a legal bar under our sufficiency standard. Simply put, given the nature of the evidence presented, as detailed above, the jury could have reasonably concluded that Victim was under 13 at the time Appellant committed all of the specific acts, given that we must give the "prosecution the benefit of all reasonable inferences to be drawn from the evidence." Widmer, supra. We conclude, therefore, that Appellant's first claim lacks merit.

Appellant next complains that the trial court provided an inadequate remedy for the Commonwealth's Brady/discovery violation. The trial court explains:

> In this case, [Appellant] received discovery materials from the Commonwealth which included a written summary of a taped forensic interview with Victim. [Appellant] did not, however, receive a copy of that taped interview. The Commonwealth asserted that it was the policy of the child advocacy center which conducted the interview not to release copies of recorded interviews, except to the police or the District Attorney's office on the condition that the recording was not to be duplicated. [Appellant] received the discovery materials, including the written summary of Victim's forensic interview, but made no inquiry into the whereabouts of the recording, and made no request to view the recording.

Id. at 11.

On March 16, 2015, the date originally scheduled for trial, Appellant's trial counsel noticed that the Commonwealth was "setting up an audio-visual display." Appellant's Brief at 9. When counsel inquired about the reason why the display was necessary, the prosecutor indicated that "it was for the video of the [f]orensic [i]nterview." Id. Subsequently,

> [u]pon [Appellant]'s motion, the trial court granted a continuance to allow [Appellant] to view the recording, then held a hearing on the matter wherein it found that no deliberate withholding occurred, as [Appellant] was put on notice of the existence of the recording but took no further action to attempt to view it. Using [Commonwealth v.] Burke[, 781 A.2d 1136 (Pa. 2001),] for guidance, the trial court examined and found that there was very little, if any, prejudice to [Appellant] arising from the violation, and thus held that the continuances already granted were an appropriate and sufficient remedy.

TCO at 11-12.

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as directly exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290, 119 S.Ct. 1936 (quoting Kyles, 514 U.S. at 435, 115 S.Ct. 1555). Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued. Id. at 281, 119 S.Ct. 1936.

[Pa.R.Crim.P. 573][11] was promulgated in response to the dictates of Brady. See Commonwealth v. Green, 536 Pa. 599, 607, 640 A.2d 1242, 1246 (1994). The rule provides, in pertinent part, as follows:

(B) Disclosure by the Commonwealth

(1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the

_____

[11] In Burke, the Supreme Court discussed prior Rule 305, which was later renumbered Rule 573, effective April 1, 2001. See Pa.R.Crim.P. 573 (note).

> Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> > (a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth.
>
> Pa.R.Crim.P. [573](B)(1)(a). In the event of a violation of Rule [573], the trial court "may order [the offending] party to permit discovery or inspection, may grant a continuance, or may prohibit [the offending] party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. []573(E).

Commonwealth v. Burke, 781 A.2d 1136, 1141 (Pa. 2001).

Instantly, Appellant argues that the remedy provided by the trial court, a continuance, was inadequate to remedy the Brady/discovery violation, for the following reasons:

> Failure by the Commonwealth to properly disclose exculpatory evidence seriously prejudiced the defense. Two motions were litigated before the court, and rulings were made in favor of the Commonwealth, all without the benefit of the exculpatory (and, for that matter, inculpatory) evidence on the DVD. In particular, the motion for Habeas Corpus relief was denied, because there appeared to be a sufficient question as to whether the alleged events occurred before the alleged victim turned 13 years. The DVD provides multiple statements material to that ruling, and may have changed the outcome of that motion. Speculation in hindsight as to how the court might have ruled and how the defense might have presented its evidence is impossible.
>
> Because of the extreme delay before this evidence was unearthed, the text messages and associated metadata which precipitated the alleged victim's accusations were spoliated by the Commonwealth. The text messages were in possession of the

alleged victim, and offered to investigators on the DVD, but disappeared before trial. Although the government has no duty "to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel," the delay in performing its statutorily and constitutionally mandated Brady disclosures has impeded the Defense's ability to obtain this evidence. U.S. v. Tadras, 310 F.3d 999, 1005 (7th Cir. 2002). The remedy that the Court provided was to continue the jury trial. That was not a sufficient remedy, under the circumstances. All charges should be dismissed with prejudice.

Appellant's Brief at 18.

The trial court, relying on Burke, rejected Appellant's claim that the Brady/discovery violation remedy was inadequate, stating:

As in Burke, dismissal in this case would have been an overly harsh and inappropriate remedy, as would have been exclusion of Victim's testimony, since that restriction would have had essentially the same effect as dismissal. Because [Appellant] requested no other specific remedy, the trial court chose the only appropriate remedy available, and thus, did not err in granting a continuance as a remedy to the violation.

TCO at 12.

We are not convinced by Appellant's arguments that the trial court's remedy was insufficient. Pursuant to Rule 573(E), the exclusion of evidence and/or the dismissal of criminal charges are extreme remedies, not even explicitly mentioned in the Rule, although ostensibly possible under the rubric of the "such other order as [the trial court] deems just under the circumstances" language of that provision. Pa.R.Crim.P. 573(E). Accordingly, such extreme remedies should be reserved for the most egregious violation of Rule 573. We reject Appellant's contention that the Commonwealth's violation here rose to that level.

In Commonwealth v. Gordon, 528 A.2d 631 (Pa. Super. 1987), the defense learned, during trial, that a police officer had prepared a report which had not been disclosed by the Commonwealth during pre-trial discovery. "Upon learning of the report and after reviewing its contents, defense counsel moved for dismissal of the charges. The court denied the motion." Gordon, 528 A.2d at 633. Despite the existence of some potentially favorable evidence for the defendant in the report, on appeal we agreed with the trial court that dismissal of charges or the granting of a new trial was not justified on the basis of the Brady/discovery violation because "anything in the report favorable to the defendant was before the learned finder of fact[,]" as "the undisclosed police report came to light at trial" and was admitted into evidence. Id. at 635.

In Commonwealth v. Crossley, 653 A.2d 1288 (Pa. Super. 1995), the Commonwealth appealed from the trial court's order dismissing charges against the defendant based on the Commonwealth's failure to disclose a witness's statement until the day before trial, even though the Commonwealth did not oppose a defense continuance to review that evidence. We reversed, holding that "[t]he failure of the prosecution to comply fully with the discovery order was not demonstrated by the appellee to prejudice his right to a fair trial." Id. at 1291. Applying a proportionality standard, we stated that

> the dismissal of the prosecution was not a remedy consistent with the wrong committed by the Commonwealth. It is conceivable, of course, that a violation may be so egregious as to recommend an order dismissing all charges. Such an order, however, was not warranted under the circumstances present in this case. A

continuance, if necessary and requested, would have been more appropriate.

Id. at 1292.

Instantly, Appellant was provided with a written summary of the Victim's forensic interview during discovery. Accordingly, Appellant was on notice that the interview occurred, and that it was recorded, but he took no action to specifically inquire as to whether any audio of visual recording of that interview still existed. We do agree with the trial court that the Commonwealth violated Rule 573 by failing to turn over a copy of the video, despite not having received a discovery request specific to that evidence. However, the video was ultimately disclosed to the defense and, therefore, any evidence derived therefrom, whether it be material or impeachment evidence, was ostensibly available to be put before the factfinder. Moreover, the remedy provided by the trial court in this case appears to be proportionate to the violation which occurred. Appellant's trial, which was originally scheduled for March 16, 2015, was postponed until April 8, 2015, affording the defense 23 days to review the one-hour-long interview.

Nevertheless, Appellant posits two arguments why he was still unduly prejudiced by the Commonwealth's delayed disclosure of the Victim's forensic interview, despite the 23-day continuance granted by the trial court. First, Appellant contends that two motions were litigated before the disclosure, both of which resulted in favorable rulings for the Commonwealth. However, Appellant only briefly discusses one of those motions in his brief, a habeas corpus motion focused on the sufficiency of the evidence as it pertained to

Victim's age at the time of the relevant sexual assaults. Appellant's Brief at 18. As discussed above, we have already determined that there was sufficient evidence to establish Victim's age based on the evidence produced at trial. Since Appellant was in possession of the previously-undisclosed video of the forensic interview, any exculpatory evidence or evidence bearing on Victim's credibility from that video regarding the age issue was for the jury to hear. As such, we find no basis upon which to conclude that the late disclosure of that evidence significantly affected the fairness of Appellant's trial with respect to the age issue. This aspect of Appellant's claim is meritless.

Second, Appellant argues that "text messages and associated metadata which allegedly precipitated the [Victim's] accusations were spoliated by the Commonwealth." Id. The text messages at issue "were in [the] possession of [Victim], and offered to investigators in the [video], but disappeared before trial." Id. However, Appellant does not claim that this lost evidence was exculpatory. At best, it was potentially helpful for the defense for the purposes of challenging Victim's credibility. In this regard, Appellant cites to the transcript of the forensic interview to claim that the texts may have indicated a motive for Victim to falsely accuse Appellant,[12] but that transcript has not been made part of the certified record in this appeal. "Our law is unequivocal

_____

[12] Essentially, Appellant asserts that Victim reportedly received a text message from Appellant asking why Victim's parents no longer liked Appellant, which was viewed suspiciously by Victim's girlfriend. From this Appellant speculates that Victim made up the charges against him in order to assuage his girlfriend's jealously.

that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." Commonwealth v. Bongiorno, 905 A.2d 998, 1000 (Pa. Super. 2006). Because the record actually before us does not support this aspect of Appellant's claim, we find it to be purely speculative and, therefore, meritless.

Accordingly, we conclude that the trial court did not err or otherwise abuse its discretion when it declined to dismiss the charges against Appellant based on the Commonwealth's failure to promptly disclose the video of Victim's forensic interview. Indeed, we agree with the trial court that the continuance granted to Appellant was an adequate and proportionate remedy for the Commonwealth's Brady/discovery violation.

Next, Appellant claims the trial court abused its discretion when it allowed the Commonwealth to introduce a photo of the victim. Appellant asserts that the prejudicial effect of the photo outweighed its probative value. The photo in question depicted Victim at that the time his arm was broken, which coincided with the time when Appellant first started spending time with him. Appellant contends that

> [t]he sweet-looking picture of [Victim] as a child was used to evoke the emotions of the jury. Since the picture was irrelevant to setting up a timeline, what would be the difference between this picture and a whole album of cute baby pictures[?] The photo is inflammatory in this context because it inflames the sympathies of the jury toward [Victim] and inflames their hatred towards [Appellant].

Appellant's Brief at 20.

With regard to the admission of evidence:

> We give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.

Commonwealth v. Sauers, 159 A.3d 1, 6 (Pa. Super. 2017) (citation omitted). With regard to the admission of photographic evidence, we have held that "[t]he determinative inquiry is whether the photos have evidentiary value that outweighs the possibility of inflaming the minds and passions of the jurors." Commonwealth v. Jacobs, 639 A.2d 786, 788 (Pa. 1994).

The trial court justified the admission of the photo at issue as follows:

> Here, the Commonwealth presented a photograph of Victim as evidence and published that photograph to the jury. That photograph depicted Victim with his arm in a cast at age ten (10) or eleven (11). Victim stated that the photograph was taken near to the time period in which he began to increase the amount of time he spent in [Appellant]'s home. As stated above, to determine admissibility of evidence of this nature, the court must first determine whether the photograph is relevant to the instant case. The photograph is certainly relevant to the case, as it helps to establish the time frame in which these encounters occurred, and Victim's age at the time. Victim's age at the time of the sexual assault was a matter of contention, as set forth above. The relevance of the photograph thus established, the court must then determine whether the photograph is "inflammatory by its very nature." This was not a photograph of a crime scene or an autopsy, or a similar visual image which has the ability to stir intense passions in a jury. This was a photograph of Victim, with his arm visibly broken and casted, taken near the time the incidents began, and offered to establish that timeframe. Therefore, since the trial court found that the photograph was relevant and not inflammatory by nature, the court did not abuse its discretion by allowing its introduction as evidence at trial.

TCO at 13-14.

We agree with the trial court. The photo's probative value may not have been substantial, but it was certainly relevant. Appellant's age at the time of the assaults was very much in contention at trial, and the photo tended to corroborate Victim's recollection of his age when he began spending time with Appellant, which was at the same time that he had broken his arm. N.T., 4/8/15, at 37. Moreover, the prejudicial effect of the photo must have been minimal. A photo of a child, even one in a cast, is not, by its nature, inflammatory. There was little to no risk of inflaming the passions of the jury from such a photo. Accordingly, we hold that the trial court did not abuse its discretion by admitting that evidence.

Finally, Appellant argues that the trial court abused its discretion by permitting the Commonwealth to question Appellant about "suspicious" activities with other children. Appellant's Brief at 7, 20. Appellant explains his final claim as follows:

> In his testimony, [Appellant] said that he would sometimes lock pinkie fingers with [Victim] when they were in a car or at a restaurant. He stated that he learned this practice from his grandchildren. The Commonwealth attorney asked [Appellant] if he ever locked pinkies with children other than his grandchildren and [Victim]. Defense Counsel objected to this line of questioning as being irrelevant and more prejudicial than probative.

Appellant's Brief at 20.

After the court overruled Appellant's objection, the full extent of the questioning that occurred was as follows:

Q. I was asking you, you said you did this interlock thing. Did you do it with other children as well?

A. I may have.

Q. Was that common practice for you?

A. No.

N.T., 8/9/15, at 303.

The trial court determined that this questioning was probative of relevant evidence, and not unduly prejudicial:

> Victim had already testified that [Appellant] told him that interlocking fingers was normal behavior, and [Appellant] had, on direct examination prior to the questioning at issue, offered instances wherein he would interlock his pinky finger with Victim[] when they were together, claiming he had learned this behavior from his grandchildren. The prosecution then expounded on that statement by asking [Appellant] if he had interlocked fingers with other children, and by asking if that was a common thing for him to do in general. Nothing further was asked in this line of questioning. These were relevant questions asked by the prosecution to determine, after hearing [Appellant]'s explanation of the behavior, whether this behavior was common for [Appellant], or if it related to the specific attentions he had given to Victim.
>
> This questioning, while potentially adverse to [Appellant]'s case, did not rise to the level of "unfair prejudice" as it has been defined in this Commonwealth. As such, the trial court finds that it did not abuse its discretion in allowing Defendant to be questioned in this manner.

TCO at 15-16 (footnotes omitted).

We agree with the trial court. The Commonwealth's question was relevant because it directly addressed Appellant's admitted physical contact with the victim, and sought only to determine whether that behavior was specific to Victim or something he did with other children. There was a single

follow up question, regarding whether this behavior was "common practice" for Appellant, to which he answered, "[n]o." Id. The inquiry into this area was brief, it directly flowed out of Appellant's own testimony on direct examination, and it was unlikely to have a significant impact on the jury in light of the other evidence introduced at trial, especially Appellant's confession. Accordingly, we agree with the trial court that any resulting prejudice was minimal and could not have outweighed the probative value of the brief line of questions. Accordingly, we conclude that the trial court did not abuse its discretion by permitting those questions. Thus, Appellant's final issue is also meritless.

Judgement of sentenced affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017