J-S16039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :         PENNSYLVANIA
                                 :
          v.                    :
                                 :
                                 :
JAMAR MCDANIELS              :
                                 :
          Appellant         :    No. 1331 EDA 2020

Appeal from the Judgment of Sentence Entered June 4, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000061-2019

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED JUNE 22, 2021**

Appellant Jamar McDaniels appeals from the Judgment of Sentence entered in the Court of Common Pleas of Montgomery County on June 4, 2020, following his convictions of various firearms and drug charges. Following our review, we affirm.

The trial court detailed the facts and procedural history herein as follows:

> On October 10, 17, 26 and 29, 2018, Sergeant Edward Kropp, Jr. utilized two confidential informants to make a total of four controlled buys from the property at 342 Lincoln Avenue, Pottstown, Montgomery County. Notes of Testimony, Mar. 3, 2020 at 89. Prior to each buy, the CI was searched to ensure that they had no money or drugs on their person or in their car. Id. at 92, 100, 219. After the search, they were given prerecorded currency to make the buy. Id. at 92, 100[.] When the informant returned with the drugs, they were searched again to ensure they had no additional drugs on their person. Id. at 94.

---

[*] Former Justice specially assigned to the Superior Court.

Officer Brett Cortis set up surveillance in the area of 342 Lincoln Avenue for each of the controlled buys. Id. at 175. On October 10, 27 and 29, 2018, Cortis observed the CI walk to the residence and enter the home through the west door; a few minutes later, the CI exited and returned to Sgt. Kropp. Id. at 175, 177. On October 17, 2018, Cortis observed [Appellant] [1] and Jean Gross[2] outside the residence at 342 Lincoln Ave. Id. at 176. He then observed the CI arrive by vehicle, get out of the car and meet with [Appellant] outside. Id. The two then entered the home. Id. A short time later, both exited the home, the CI returned to their vehicle and drove away, and [Appellant] remained outside. Id. Based on this series of controlled buys, law enforcement obtained a search warrant for the residence, however, [Appellant] and his co-conspirators were not charged with these controlled buys.

On November 2, 2018, officers served the search warrant on the property at 342 Lincoln Ave. Id. at 25. One of the CIs had also provided information that the doors of the residence were fortified with two by fours and that weapons were readily available in the home. Id. at 26. When no one answered the door, police forced entry into the home. Id. at 27. Four individuals were inside the home, Ronald [McDaniels] and [Appellant], Kysim Gardner and Ronald McDaniels' minor son. Id. at 28-29, 34.

The parties stipulated that the following items that were recovered from the first floor of the home contained controlled substances: the clear zip-lock bag located in the trash bag on the kitchen floor, contained 0.39 grams of cocaine. Exhibit C-63; the nine (9) clear capsules located on the kitchen floor, contained 0.06 grams of caffeine. Exhibit C-67; the twenty-seven (27) clear capsules located inside the black bag on the kitchen floor contained 0.18 grams of caffeine. Exhibit C-70; the four (4) plastic containers with yellow lids located inside the black vest on the basement door, contained 0.88 grams of cocaine and N-Ethylpentylone. Exhibit C-74; the silver capsule located in the leather jacket on the basement door, contained 0.71 grams of caffeine, sildenafil, and tadalafil. Exhibit C-75; the knot sealed clear bag and the clear zip-lock bag located inside the silver box in the dining room, contained 12.73 grams of cocaine and 15.64 grams of cocaine, respectively. Exhibit C-79; the three (3) clear zip-lock bags and the yellow plastic container located inside the silver box in the dining room, contained 0.98 grams of cocaine and 0.28 grams of cocaine, respectively. Exhibit C-80; the fifteen (15) yellow plastic containers located inside cigarette wrapper in the dining room dresser, contained 3.56 grams of cocaine and N-

Ethylpentylone. Exhibit C-83; C-the eighty-five (85) yellow plastic containers located inside the black Zoraki gun case in the dining room, contained 20.05 grams of cocaine and N-Ethylpentylone. Exhibit C-84; the two (2) digital scales located inside dining room dresser drawer, both test positive for cocaine. Exhibit C-86. Mail addressed to [Appellant] and a physical therapy schedule were also recovered from the dresser drawers in the dining room. Id. at 67-69.

A loaded Zoraki handgun with an extended magazine was found in a bag in the living room. Id. at 74. Two Newport cigarette packs containing a razor, packaging and a Sprint receipt for the phone number 267-701-1135. Id. at 78. A loaded Ruger pistol with an obliterated serial number was recovered from inside of an end table in the living room. Id. at 79-80.

Upstairs, in the south bedroom of the home, a sock was found in a cardboard box containing $2,400 cash, a social security card for [Appellant], a state identification card for [Appellant], two green dot debit cards for [Appellant], and a knotted baggie of cocaine. Id. at 180-183. The clear plastic bag located in the sock, contained 14.32 grams of cocaine. Id. at 184. A duffle bag containing two cell phones, ammunition and mail addressed to [Appellant] was also found in the same bedroom. Id. at 185-186.

In the north bedroom, two loaded handguns, a .40 caliber Taurus and a Glock 27, were found sitting on an ottoman. Id. at 190-191. Next to the guns, police recovered a brown eyeglass case which contained a clear zip-lock plastic bag containing 2.93 grams of marijuana and plastic vials identical to those found in the kitchen. Id. at 195-197. Inside the ottoman, police recovered a drug sales ledger, packaging and cutting materials, as well as a cigar box containing cocaine, paperwork addressed to Ronald McDaniels and a copy of his birth certificate. Id. at 197-198. The yellow plastic container located inside the cigar box in the north bedroom, contained 0.07 grams of cocaine. Id. at 199. The two (2) clear plastic bags located inside the cigar box in the north bedroom, contained 117.84 grams of cocaine. Id. at 200. Additionally, $4,667 cash was found in a sock in the pocket of a pair of jeans on the floor of this bedroom. Id. at 202. A prerecorded $20 bill from the controlled buy on October 29, 2018 was found in the front pocket of the jeans and another $600 cash was in the other front pocket. Id. at 204. On the nightstand in this room, police recovered a state issued identification card for Ronald McDaniels as well as a cell phone. Id. Ammunition, another drug ledger and a marijuana pipe were also recovered from the nightstand. Id. at 206. In the top of the closet in this bedroom,

police recovered glassine baggies, typically used to package drugs for sale. Id. at 209. Additional paperwork addressed to Ronald McDaniels was found in the closet. Id. at 211. Another gun and ammunition were recovered under the bed. Id. at 213. A total of five guns were recovered from the home. Id. at 215.

Police were able to download the contents of the phone used by Jean Gross and the phone used by [Appellant]. N.T. Mar. 5, 2020 at 31, 33. The phone belonging to [Appellant] contained numerous drug related text messages in the months leading up to the controlled buys and search warrant. Id. at 39-43. The messages also reference Ronald McDaniels and Jean Gross as being involved in the drug trade. Id. at 43.

A criminal complaint was filed November 2, 2018. The first pretrial conference in this matter was scheduled for March 21, 2019. On that date, [Appellant] requested a continuance. The next pretrial conference was scheduled for April 10, 2019. On April 10, 2019, [Appellant] filed an Order for Competency Evaluation. On that date, [Appellant] requested a second continuance for sixty days to obtain a Competency Evaluation and signed a Rule 600 waiver. On April 11, 2019, [Appellant] filed two documents titled "Request for Pretrial Discovery Pursuant to Pa. R. Crim. P. 573" and a hearing was scheduled for April 26, 2019. On April 26, 2019, The Honorable Arthur R. Tilson, acting as the Criminal Miscellaneous Judge, dismissed the Request as Moot, noting that the Defendant's Motion to Compel the confidential informant ("CI") should be heard by the undersigned. The case was placed on the call of the trial list for June 24, 2019. On June 24, 2019, the case was placed on standby for the period of July 8 through July 26, 2019. At the next call of the trial list, the case was again placed on standby for the period of August 5, 2019 through August 16, 2019. At the next trial list on August 19, 2019, the case was again placed on standby for the period of August 26, 2019 through September 20, 2019. By Order of August 23, 2019, a Competency hearing was scheduled for August 28, 2019. On August 28, 2019, the matter was continued to September 23, 2019 for a status conference on the [Appellant's] competency. On September 16, 2019, [Appellant] was directed to appear for a competency evaluation on September 23, 2019. At the next call of the trial the case was again placed on standby with the notation [Appellant] was declared incompetent. On October 21, 2019, the case was again placed on standby with the notation that the Commonwealth's competency evaluation was imminent.

On November 4, 2019, [Appellant] requested a continuance of the Bench Trial scheduled for that date. A determination of

competency hearing was scheduled for November 25, 2019. The hearing was rescheduled for December 11, 2019. On that date, a witness failed to appear and a bench warrant was issued. The matter was scheduled again for a determination of competency for January 22, 2020. On that date [Appellant] was found competent to stand trial.

On February 13, 2020, [Appellant] filed a "Motion to Dismiss for Violation of Rule 600 and Motion to Continue Trial." A hearing on [Appellant's] Rule 600 Motion was held on February 13, 2020. The [c]ourt denied the same by Order. Trial commenced on March 2, 2020. Following a two[-]day trial, [Appellant] was convicted of Possession with the Intent to Distribute-Cocaine[3], Possession of a Firearm with an Altered Manufacturer's Number[4], Criminal Use of Communication Facility[5], and three counts of Conspiracy.[6]

On June 4, 2020, [Appellant] was sentenced to an aggregate term of 10-20 years' imprisonment in a State Correctional Institution. This appeal followed. By Order of July 6, 2020, the Defendant was directed to file a concise statement of errors, pursuant to Pa. R.A.P. 1925 (b). He has since complied with that directive.

____

[1] In the matter indexed at 62-2019, following a joint trial with [Appellant], Ronald McDaniels was convicted of three counts Conspiracy, Receiving Stolen Property, Possession of Firearm with an Altered Manufacturer's Number, Possession with the Intent to Deliver. He received an aggregate sentence of 9-18 years' incarceration in a State Correctional Facility.
[2] In the matter indexed at 63-19 Jean Gross is awaiting trial.
[3] 35 Pa. C.S. § 780-113(a)(30).
[4] 18 Pa. C.S.A. § 6110.2(a).
[5] 18 Pa. C.S.A. §7512 (a).
[6] 18 Pa. C.S.A. § 903 (a)(l).

Trial Court Opinion, filed 9/14/20, at 1-7.

In his brief, Appellant presents the following Statement of the Questions Involved:

   I.    Did the trial court abuse its discretion when it allowed the admission of an out-of-court statement by a confidential informant who identified a drug distributor contacted via phone as "B" prior to a drug transaction, when that

confidential informant immediately thereafter provided police with drugs presumably from "B," and when later evidence connected Defendant/Appellant to the alias "B"?

II. Were [Appellant's] rights to compulsory process and confrontation afforded by Article 1, Section 9 of Pennsylvania's constitution violated when the trial court quashed and denied a request by [Appellant] to obtain the names, addresses, criminal histories, and other information that would effect [sic] the reliability and bias of confidential informants, when those confidential informant's [sic] out-of-court statements were admitted through police officers at trial, identifying the [Appellant] as an individual with whom drug transactions were conducted and as the owner/operator of a phone on which drug transactions were conducted?

III. Were the [Appellant's] rights pursuant to *Pa.R.Crim.P. 600* violated, when the trial court denied [Appellant'] request to dismiss the charges against him, when the [c]ourt had previously granted a continuance of trial requested by the [Appellant] for late discovery and motions provided by and filed by the Commonwealth more than 365 days after the criminal complaint was filed?

Brief for Appellant at 6.

Before we address the merits of Appellant's first two issues, we must determine whether the claims presented have been properly preserved for our consideration on appeal. Our Courts consistently have ruled that where the trial court directs a defendant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925, any issues not raised in that statement shall be waived. **Commonwealth v. Bullock**, 948 A.2d 818, 823 (Pa.Super. 2008) (citing **Commonwealth v. Lord**, 719 A.2d 306, 308 (Pa. 1998)). In **Commonwealth v. Butler**, 812 A.2d 631, 633 (Pa. 2002), our Supreme Court reaffirmed its holding in **Lord** and stated: "In **Lord**, however,

this Court eliminated any aspect of discretion and established a bright-line rule for waiver under Rule 1925 .... Thus, waiver under Rule 1925 is automatic." *See also Commonwealth v. Oliver*, 946 A.2d 1111, 1115 (Pa.Super. 2008) (noting that *Lord* "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

We are mindful that Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues the parties plan to raise on appeal. The absence of a trial court opinion addressing a particular claim poses a substantial impediment to meaningful and effective appellate review. *Commonwealth v. Lemon*, 804 A.2d 34, 36 (Pa.Super. 2002). Thus, Rule 1925 is a crucial component of the appellate process. *Id.* at 37. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super. 2001).

Furthermore, claims that are not raised before the trial court are waived. *See Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa.Super. 2000) (stating that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal."); *Commonwealth v. Ryan*, 909 A.2d 839, 845 (Pa.Super. 2006) (citing *Commonwealth v. Gordon*, 528 A.2d 631, 638 (Pa.Super. 1987) (reiterating that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories

support the same basic allegation of error which gives rise to the claim for relief.")). Moreover, "[e]ven if the trial court correctly guesses the issues [a]ppellants raise[ ] on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." *Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa.Super. 2002).

Also, we do not condone Appellant's incorporation by reference of his Motion for Pretrial Discovery, Orders of Court, and excerpts from the notes of trial testimony in paragraphs one and two of his Concise Statement of Matters Complained of on Appeal.  *See Commonwealth v. Smith*, 955 A.2d 391, 393 n.5 (Pa.Super.  2008) (stating: "We do not condone the Commonwealth's incorporation by reference of its motion for reconsideration. A Rule 1925(b) statement should include a concise statement of each issue to be raised on appeal").

Herein, Appellant included the following issues in his concise statement:

1.    The [c]ourt  erred in denying [Appellant's]  Motion  for Pretrial Discovery pursuant to the protections afforded by Pa.R.Crim.P. 573, and the right to confrontation and compulsory process guaranteed by Article 1, Section 9 of Pennsylvania's constitution. *See* Motion for Pretrial Discovery filed 4 / 11 / 19, and Orders of Court dated 4/26/ 19, 2/ 13/20.

2. The [c]ourt erred in denying [Appellant's] objection to hearsay testimony of a confidential informant being admitted at trial, in contravention of Pa. R.E. 802, [Appellant's] right to confrontation pursuant to the Sixth Amendment of the United Sates Constitution, and the right to confrontation and compulsory process guaranteed by Article 1, Section 9 of Pennsylvania's constitution. *See* **N.T.** 3/3/20 p. 98: 17-99:25: 142:22-144:3.

3. The [c]ourt [e]rred in  Denying [Appellant's] Motion to Dismiss

for Violation of Rule 600, in contravention of the protections afforded by Pa. R.Crim.P. 600. *See* Defendant's Motion to Dismiss for Violation of Rule 600 and Motion to Continue Trial filed 2/13/20 and the Order of Court dated 2/13/20.

*See* Concise Statement of Matters Complained of on Appeal, filed 7/27/20, at ¶¶ 1-3.

The trial court characterized Appellant's first allegation as "couched as a vague, discovery related issue [that] appears to actually challenge th[e] [c]ourt's denial of his motion to compel the identity of the confidential informants used in this case." Trial Court Opinion, filed 9/14/20, at 8. Indeed, Appellant's Rule 1925(b) statement did not include the precise claims of error he advances before this Court, *i.e.*, that a statement made by one of the CIs identifying Appellant as the source of crack cocaine the CI purchased was erroneously considered admissible as evidence at trial under the permissible course-of-conduct exception to the hearsay doctrine. Brief for Appellant at 11. Accordingly, we conclude Appellant's first issue presented in his appellate brief is waived.

Appellant's second claim in his concise statement similarly raised only general allegations of violations of the Pennsylvania Rules of Evidence and of his constitutional rights to confrontation. Yet, in his appellate brief, he develops his theory that "[a]s a matter of first impression, Appellant/Defendant argues that *Com. v. Loyd*, 567 A.2d 1357 (Pa. 1989) and its progeny are applicable, and the qualified immunity afforded to confidential informants by common law is not applicable to a request for confidential informant information pursuant to Article 1, Section 9 of Pennsylvania's

constitution." Brief for Appellant at 11, 17-26. In light of the foregoing, Appellant has waived this issue as well.[1]

In his third issue, Appellant maintains the trial court erred in denying his Motion to Dismiss pursuant to Pa.R.Crim.P. 600. Appellant argues the Commonwealth failed to provide "full, requested discovery," "file motions" or provide "critical notice of evidence it sought to be admitted" within the 365-day time period. Although he admits "[t]here is no denying that no party could possibly be ready for trial during a competency evaluation by [Appellant]," he concludes that this "played no bearing on whether the Commonwealth could prepare discovery to provide to [Appellant], or file a

_____

[1] Nonetheless, even if we were to consider the merits of Appellant's first two questions presented in his appellate brief, we still would conclude that he is not entitled to relief. Here, the trial court accurately and thoroughly addressed the merits of these challenges and found neither afforded Appellant relief. *See* Trial Court Opinion, 9/14/20, at 8-14. The trial court concluded that the identity of the CIs was not material to any defense raised at trial, because Appellant did not pursue a mistaken identity defense, he was present at the home when the search warrant was executed, and several items were found in the home linking him to it and the drug sales. The court further found that testimony relating to the October 17, 2018, controlled drug buy was not the only evidence presented at trial that identified Appellant and his phone number, and, therefore, it had not been improperly admitted. The court stressed that in addition to being identified by a CI, Appellant was observed by Officer Curtis meeting with the CI at the home on October 17, 2018, and participating in a drug buy. This activity led officers ultimately to obtain and execute a search warrant. Furthermore, the parties stipulated that on October 9, 2018, Officer Matthew Maciejewski responded to Dino's grocery store on 269 Beech Street where he met Appellant who stated he had slipped while inside the store and injured his leg and rib. At that time, Appellant provided his cell phone number to the officer as 267-701-1135. *Id*.

motion disclosing the prior bad acts and the basis thereof that it sought to introduce." Brief for Appellant at 30-32.

In considering this claim, we employ the following standard of review:

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Leaner***, 202 A.3d 749, 765-66 (Pa.Super. 2019) (citation omitted; brackets in original), *appeal denied*, 2019 WL 2754197 (Pa. 2019). An appellate court's scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing" and the trial court's findings of fact. ***Commonwealth v. Watson***, 140 A.3d 696, 698 (Pa.Super. 2016). Appellate courts must construe the facts in the light most favorable to the prevailing party. ***Id***.

Pa.R.Crim.P. 600 states that: "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Generally, Rule 600 requires the Commonwealth to try a defendant before the expiration of the "mechanical run date," *i.e.,* within 365 days of the filing of a criminal complaint. ***Id.***; ***Commonwealth v. Ramos***, 936 A.2d 1097, 1101

(Pa.Super. 2007). However, Rule 600 permits certain circumstances to extend the Commonwealth's deadline. See Pa.R.Crim.P. 600(C).

To determine the final date by which a defendant must be tried, Rule 600 provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). The Commonwealth's failure to satisfy the prompt-trial requirements of Rule 600(C) constitutes grounds for dismissal. **See** Pa.R.Crim.P. 600(D)(1).

Moreover, a defendant is not automatically entitled to dismissal under Rule 600 if his or her trial commences after the mechanical run date. **Commonwealth v. Goldman**, 70 A.3d 874, 879 (Pa.Super. 2013). Dismissal is an appropriate remedy only if the defendant has not been brought to trial by the expiration of the adjusted run date. **Id**. "The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable and excusable delay." **Commonwealth v. Roles**, 116 A.3d 122, 125 (Pa.Super. 2015). Periods of delay are excluded from the calculation if they are attributable to a defendant or his counsel. **Commonwealth v. Martz**, 232 A.3d 801, 810 (Pa.Super. 2020) *reargument dismissed* (May 18, 2020). To the contrary, periods of delay are excusable "where the delay is caused by circumstances beyond the Commonwealth's

- 12 -

control and despite its due diligence." *Id*.  Due diligence is a fact-specific

inquiry and must be determined on a case-by-case basis. ***Commonwealth v.***

***Selenski***, 994 A.2d 1083, 1089 (Pa. 2010). A finding of due diligence "does

not require perfect vigilance and punctilious care, but merely a showing the

Commonwealth has put forth a reasonable effort." *Id*.

Prior to determining whether Appellant is entitled to dismissal of the

charges brought against him under Rule 600, we must consider the following

three factors:

> First*,* Rule 600(A) provides the mechanical run date. Second, we
> determine whether any excludable time exists pursuant to Rule
> 600(C). We add the amount of excludable time, if any, to the
> mechanical run date to arrive at *an* adjusted run date*.* If the trial
> takes place after the adjusted run date, we apply the due diligence
> analysis set forth in Rule 600([D]). As we have explained, Rule
> 600[ ] encompasses a wide variety of circumstances under which
> a period of delay was outside the control of the Commonwealth
> and not the result of the Commonwealth's lack of diligence. Any
> such period of delay results in an extension of the run date.
>      Addition of any Rule 600[ ] extensions to the adjusted run
> date produces the final Rule 600 run date. If the Commonwealth
> does not bring the defendant to trial on or before the final run
> date, the trial court must dismiss the charges.

***Commonwealth v. Armstrong***, 74 A.3d 228,236 (Pa.Super. 2013) (citations

and internal quotation marks omitted; brackets in original).

In denying Appellant's Motion to Dismiss for Violation of Rule 600,  the

trial court calculated the time as follows:

> [T]he delay in this case was entirely attributable to
> [Appellant].  A complaint in this matter was filed on November 2,
> 2018.  Therefore, the mechanical run date was November 2, 2019.
> At the first pretrial conference, on March 21, 2019, [Appellant]
> requested a continuance.  On April 10, 2019, at the next pretrial

- 13 -

conference, [Appellant] filed a motion for competency evaluation. He was found competent to stand trial on January 22, 2020. Thus, the 307 days that [Appellant] was awaiting a competency evaluation or determination are excludable. Thus, the adjusted run date was September 5, 2020. Trial commenced on March 2, 2020, well within that time. Insofar as [Appellant] attempted to tie his Rule 600 argument to illusory discovery issues,[7] he cannot escape the fact that he sought and obtained continuances for more than nine months while he contested his competency to stand trial. Therefore, this [c]ourt did not abuse its discretion in denying his Rule 600 motion.

_____
[7]See, e.g., N.T. Feb 13, 2020 at 17, 30-33.

Trial Court Opinion, filed 9/14/20, at 17.

Our review of the transcript of the hearing on Pretrial Motions, including Appellant's Rule 600 Motion, held on February 13, 2020, supports the trial court's findings.

A criminal complaint was filed on November 2, 2018; therefore, the mechanical run date, was November 2, 2019. *see* Pa.R.Crim.P. 600(A)(2)(a). Appellant's trial did not commence until March 2, 2020, 486 days after the criminal complaint had been filed. However, in attempting to base his Rule 600 claim upon his bald allegations that the Commonwealth failed to provide him with discovery, Appellant omits to mention that at the pretrial conference on April 10, 2019, Appellant signed a Rule 600 waiver which stated the following:

> I understand that under Rule 600 of the Pennsylvania Rules of Criminal Procedure my trial in Montgomery County Court must begin on or before the 180th day from the filing of the Criminal Complaint if I am incarcerated. I understand that my trial must begin on or before the 365th day from filing of the Criminal Complaint if I am not incarcerated. I further understand that the

- 14 -

charges against me may be dismissed if my trial does not commence within the time allowed under Rule 600, and that by signing this waiver I am giving up my right to be tried within the time allowed under Rule 600. I am agreeing that my time may begin after the Rule 600 time limit. I have not been made any promises, nor have I been forced to sign this waiver. I read and write the English language, or this waiver has been explained to me in a language that I understand.

The waiver form Appellant signed further indicated that as he was out on bail, the 365 day time period applied. As stated above, a court may exclude "any period of time for which the defendant expressly waives Rule 600" and any period resulting from a "continuance granted at the request of the defendant or the defendant's attorney." Pa.R.Crim.P. 600, *cmt*. We cannot ignore the fact that Appellant executed a Rule 600 waiver and made a request for a competency hearing independent of the Commonwealth's alleged failure to provide additional discovery. Thus, Appellant expressly waived his rights under Rule 600 while he sought and obtained numerous continuances during the course of nine months during which time he contested his competency to stand trial and sought a competency evaluation.

Moreover,

"The law is clear that the Commonwealth is constitutionally barred from trying a defendant who is incompetent." *Commonwealth v. Fisher,* 334 Pa.Super. 449, 483 A.2d 537, 539 (1984). Accordingly, for purposes of Pa.R.Crim.P. Rule 1100 (now Rule 600), the statutory mechanism for enforcing a defendant's speedy trial rights, this Court has held that a criminal defendant is unavailable for trial "from the time he requests a continuance for evaluation of his competency until he is adjudged competent to stand trial." *Id.* This is no less true when applying the constitutional standard.

- 15 -

***Commonwealth v. Miskovitch***, 64 A.3d 672, 681 (Pa.Super. 2013).

In fact, although arguing the Commonwealth filed items relating to pretrial discovery requests late in support of his theory that it was not ready for trial before March of 2020, counsel for Appellant admitted Appellant previously contested his competency to stand trial and stated the following:

> MR. KOSCHIER: Your Honor, as it relates to those time periods, we absolutely admit that [Appellant's] requested continuances -- he was unavailable for trial during this period and that if Your Honor holds that to be excludable time for the Commonwealth, we haven't yet run past that date. The question doesn't end there, Your Honor. The question is whether or not that is appropriate to exclude.

N.T., 2/13/20, at 11-12. The following discourse later ensued:

> THE COURT: Do you have a case where the defendant is being alleged to be incompetent, nothing has happened in the case during the incompetency and then when the defendant was competent, the Supreme Court of Pennsylvania, as you like to say, applied the rule that they had in [***Commonwealth v.***] ***Mills*** [162 A.3d 323 (Pa. 2017)] to say that that is a Commonwealth violation of Rule 600? other cases? Do you have any other cases?
>
> [Defense Counsel]: There has not been a Pennsylvania Supreme Court case other than ***Mills*** on Rule 600.
>
> THE COURT: I'm familiar with ***Mills***. ***Mills*** is inapplicable. . . .

***Id***. at 18.

Accordingly, we conclude that periods of excusable and excludable time sanctioned the delay between November 2, 2018, and March 2, 2020. Finding no abuse of discretion, we affirm the trial court's determination that

- 16 -

Appellant's Rule 600 rights were not violated, and he is not entitled to relief on this issue.

Judgment of Sentence Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2021